APPEAL OF SIESEL: SIESEL, Appellant, vs. TAX COMMISSION and another, Respondents.

*March 5—April 2, 1935.*

For the appellant there were briefs by *Olwell & Brady* of Milwaukee, and oral argument by *Bernard V. Brady*.

For the respondents there was a brief by the *Attorney General, Herbert H. Naujoks,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Naujoks.*

MARTIN, J.   During the year 1930 and previously, plaintiff was a resident of Milwaukee county.   His mother was then, and for many years prior had been, a resident of the state of Pennsylvania.   While thus residing in Pennsylvania, she acquired and owned certain shares of stock in the General Electric Company, not a Wisconsin corporation.   The original cost of said stock to her was $22.5105 per share.   On March 6, 1930, said stock had increased in value to $78.75 per share. The stock certificates evidencing such shares had been always kept by her in Pennsylvania.

On March 6, 1930, while plaintiff was visiting his mother at Pittsburgh, Pennsylvania, she there made him a gift of three hundred and thirty shares of such stock, and caused the certificates to be delivered to him. Plaintiff returned to Milwaukee on the night of March 6th, and on March 7, 1930, delivered the stock certificates to the Milwaukee branch office of Paine, Webber & Company, New York stock exchange brokers, with directions to them as brokers to sell the stock. On the same day, Paine, Webber & Company, in the ordinary manner of stock exchange sales, caused the three hundred and thirty shares to be sold in New York city on the New York stock exchange at $78.75 per share, or an aggregate price of $25,908.30, and confirmed the sale to plaintiff and paid him the sale price.

Plaintiff made the following entry in his books of account under date of March 7, 1930: "Gift Mrs. Siesel, $25,908.30 cash." His auditors advised him that gifts were not taxable and that he need not report the transaction. He did not include it in his 1930 income tax return. On subsequent inquiry from the assessor of incomes, he reported the facts to the assessor, who thereupon made an assessment of additional income for the year 1930 in the sum of $18,579.84, being the difference between the sale price of the stock and the initial cost of said shares to plaintiff's mother, which was $7,428.46. The assessor made this assessment under that portion of sec. 71.02 (2) (d), Stats., which provides that, when a donee sells gift property, his cost basis shall be that of the last preceding owner who did not acquire by gift. The increase in value—$18,579.84—realized by plaintiff on the sale over the initial cost of the stock to his mother occurred while the shares were owned by her while she was a resident of Pennsylvania and while the certificates were held by her in Pennsylvania. It appears that plaintiff was personally indebted at Milwaukee, and requested the stock be given to him

to permit him to pay off some of said indebtedness. The gift was thus made.

The statute under consideration is that portion of sec. 71.02 (2) (d), Stats. 1929, which defines gross income, in part, as follows:

"All profits derived from the transaction of business or from the sale of real estate or other capital assets; . . . and, provided, further, that the basis for computing the profit or loss on the sale of property acquired by gift after 1922 shall be the same as it would have been had the sale been made by the last preceding owner who did not acquire it by gift. . . ."

Plaintiff contends that the item of $18,579.84 assessed against him as additional income for the year 1930 was not properly taxable against him under the statute above quoted; that the sum on which the tax was levied was not an income as the term is used in the Wisconsin constitution.

Sec. 71.01, Stats. 1933, entitled "Persons and subjects taxable," provides, in part, as follows:

"There shall be assessed, levied, collected and paid a tax on all net incomes as hereinafter provided, by every person residing within the state or by his personal representative in case of death; and by every nonresident of the state, upon such income as is derived from the property located or business transacted within the state, except as hereinafter exempted. Every natural person domiciled in the state of Wisconsin, and every other natural person who maintains a permanent place of abode within the state or spends in the aggregate more than seven months of the income year within the state, shall be presumed to be residing within the state for the purpose of determining liability for income taxes and surtaxes. . . ."

The reference to "property located or business transacted within the state" relates only to the taxation of nonresidents' incomes. It is conceded that plaintiff was a resident of Wisconsin, as that term is defined in sec. 71.01, Stats., prior to

and at the time of the acquisition and sale of the stock in question.

After citing certain exceptions with which we are not concerned, sec. 71.02 (3) (c), Stats., provides that the taxable income of a resident of this state shall include ". . . all other income, including royalties from patents, income derived from personal services, professions and vocations and from land contracts, mortgages, stocks, bonds and securities or from the sale of similar intangible personal property. . . ."

"Income" as used in the Wisconsin constitution has a definite, well-understood meaning. In *State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 310, 158 N. W. 87, speaking through Chief Justice WINSLOW, this court said:

"The word 'income' has a definite, well-understood meaning. No attempt was made to define it in the constitutional amendment for the reason that it carried its meaning with it. That meaning was and is the 'common, ordinary meaning,' as the word is used in every-day life. *Van Dyke v. Milwaukee,* 159 Wis. 460, 150 N. W. 509. In brief, it may be said to be the profit or gain derived from capital or labor or from both combined. . . . *Income Tax Cases,* 148 Wis. 456, 513, 134 N. W. 673, 135 N. W. 164. . . . 'The Income Tax Law does not seek to reach property or an interest in property as such, but to reach incomes having a situs within the state or growing out of a privilege exercised or occupation conducted within the state.' *State ex rel. Manitowoc Gas Co. v. Wis. Tax Comm'.* 161 Wis. 111, 152 N. W. 848. 'Income in the sense of tax laws is not the capital or stocks of goods in which the capital may be expended.' *United States Glue Co. v. Oak Creek,* 161 Wis. 211, 153 N. W. 241."

In *Falk v. Wisconsin Tax Comm.* 201 Wis. 292, 230 N. W. 64, this court, ·speaking through the late Justice OWEN, said:

"Income is the basic essential for the income tax authorized by the constitution. Without income there can be no tax. The term 'income' as used in the constitution is to be

interpreted in accordance with its common, ordinary meaning as understood in every-day life."

In *Norris v. Wisconsin Tax Comm.* 205 Wis. 626, 630, 237 N. W. 113, 238 N. W. 415, the court said:

". . . An act which attempts to impose an income tax on what is, and is commonly understood to be, principal, capital, or corpus of an estate, is void."

The income tax amendment to the constitution would not justify an income tax on property acquired by inheritance, as that would not constitute income; nor on property acquired as in the instant case, as that would not constitute income taxable under ch. 71, Stats. *State ex rel. Bundy v. Nygaard, supra,* presented a situation where a taxpayer owned certain corporate stock at the time the income tax law became effective and later sold the stock at a profit of $104,000 over his cost, although the sale price was not in excess of the market value of the property at the time the income tax law became effective. The legislature had amended the income tax act in a way which attempted to tax a part of this value existing in the stock but unrealized until the subsequent sale. This court declared the legislature could not do that because that unrealized value was "capital, or, in other words, property; its status was fixed; no part of it could be made into income by legislative enactment."

In the instant case, Wisconsin had no jurisdiction of the property or the donor at the time the increase in value above the donor's cost occurred. It had no jurisdiction to attempt to reach that as income in any way. The situation is no different than it would be had the plaintiff's mother sold the stock in Pennsylvania on March 6, 1930, for $25,908.30 and thereupon made the plaintiff a gift of said amount in cash. Sec. 71.05 (1) (b), Stats., provides:

"There shall be exempt from taxation under this chapter [income tax act, ch. 71] income as follows, to-wit: . . .

(b) All inheritances, devises, bequests and gifts received during the year. . . ."

Our attention has been called to several federal cases interpreting the federal income tax law, the state contending that the federal courts have generally held that under a state of facts similar to those in the instant case, the item of $18,579.84 would constitute taxable income. That may be conceded under the federal income tax law where the donor, the donee, and the gift property were subject to the jurisdiction of the federal government. We are concerned in the instant case with the question of the jurisdiction of the state of Wisconsin over an alleged income resulting from the increase in value of the three hundred and thirty shares of stock in the General Electric Company represented by the difference between the original cost of said stock to appellant's mother and, the market value of said stock as of March 6, 1930, being the date of the gift of said stock to appellant; said market value being the figure at which appellant sold said stock on March 7, 1930.

Since the donor at all of the times in question was a resident of the state of Pennsylvania, and since she was the owner of the stock in question when its increase in value attached, we hold that the disputed item of $18,579.84 was not properly taxable income of the appellant in 1930, and that the judgment appealed from must be reversed in accordance with the conclusion reached.

*By the Court.*—Judgment reversed, with directions to enter judgment vacating the additional assessment appealed from.