DEPARTMENT OF REVENUE, Appellant-Petitioner,

v.

Romain A. HOWICK, Respondent.

Supreme Court

*No. 79–105.  Argued October 27, 1980.—Decided February 2, 1981.*

(Also reported in 303 N.W.2d 381.)

For the petitioner there was a brief (in court of appeals) by *Bronson C. La Follette,* attorney general, and *Allan P. Hubbard,* assistant attorney general, and oral argument by *John J. Glinski,* assistant attorney general.

For the respondent there was a brief (in court of appeals) and oral argument by *Romain A. Howick, pro se,* of Hartland.

COFFEY, J.   This is a review of a decision of the court of appeals[1] affirming an order of the circuit court dismissing the petition of the Wisconsin Department of Revenue (Department) to set aside a decision and order of the Wisconsin Tax Appeals Commission (WTAC). The WTAC had granted Romain A. Howick's (taxpayer) petition for abatement of the Department's assessment of additional income taxes for the years 1970 through 1973, inclusive.

This controversy involves the Department's treatment of loss on the sale of corporate stock for income tax purposes when stock is sold by a Wisconsin resident who purchased it while a resident of the state of Iowa.

The taxpayer moved to Wisconsin on June 20, 1970, and immediately thereafter divested himself of certain shares of stock that he acquired while a nonresident. As a result of the stock sold in Wisconsin in 1970, he suffered a $10,043.82 loss, having purchased the same for $56,436.42. Thus, he reported the difference between $56,436.42 and the sale price of $46,392.60 or $10,043.82 on his 1970 federal income tax return as a net long-term capital loss. Howick also reported this loss on his 1970 Wisconsin tax return and deducted $1,000 each year

---

[1] The decision of the court of appeals is reported at 95 Wis.2d 41, 289 N.W.2d 336 (Ct. App. 1980).

thereafter from ordinary income through 1972 (3 years).[2]

In 1973 Howick divested himself of more stock he acquired while a resident of Iowa. He purchased this stock for $13,317.40 and suffered a $4,875.57 loss at the time of sale. The taxpayer combined this 1973 loss ($4,875.57) with the balance of a loss carry over from 1970 and thus offset a long-term gain realized from other 1973 stock transactions. This netting process (offsetting long-term gains by long-term losses *see:* I.R.C. §1222) yielded a $516.10 loss that the taxpayer deducted from ordinary income in 1973.

On October 6, 1975, the Department of Revenue made an additional income tax assessment against Howick in the amount of $978.96 plus interest.[3] The Department audited Howick and determined that he had erred in calculating his losses for the years 1970 and 1973 for sales of stock acquired while he was a nonresident. The Department's determination was based on the following administrative rule set forth in a Revenue Department Memorandum dated April 1, 1966:[4]

". . . in determining the gain or loss on capital assets disposed of by a resident individual who had acquired such assets prior to the time such individual became a Wisconsin resident, the basis of the asset to be used would be: (1) if gain is realized, the difference between the selling price and the higher of the fair market value or the adjusted basis of the asset at the time Wisconsin

---

[2] Under the I.R.C. Howick was only allowed to take a $1,000 loss deduction from ordinary income in any given year, and was permitted to carry forward unused losses to succeeding years. *See:* I.R.C. §1211 (1973).

[3] Originally, the Department claimed additional income taxes in the amount of $1,543.59 plus interest, but this determination was later adjusted to the $978.96 figure.

[4] This rule is presently found at Wis. Adm. Code Tax, §§2.30 and 2.97 (1978).

residency was established, or (2) if a loss was sustained, the difference between the selling price and the lower of the fair market value or adjusted cost basis of the asset at the time Wisconsin residency was established. If no gain is determined under (1) and no loss determined under (2), no gain or loss would be reportable on the Wisconsin income tax return in the year of sale." *See:* Vol. 1, Wisconsin Tax Rep. (CCH) ¶10–414.20.

In essence, this rule provides for an adjustment in some circumstances to the federal cost basis of a capital asset (corporate stock). If applicable, the adjustment is based on the value of the asset on the date the taxpayer established residence in Wisconsin. Its net effect is to minimize both gains and losses recognized on the sale of stock purchased before the taxpayer became a resident of this state. Only subsec. two (2) of the Revenue Department's Memorandum dated April 1, 1966, referred to above, is involved in this case.[5] The Department explained its application of this rule to the taxpayer herein as follows:

"1. If the selling price after moving into Wisconsin was less than the original cost of the stock when purchased out of state and its fair market value on June 20, 1970, when the taxpayer first moved into Wisconsin, the loss recognized was the difference between the selling price and the lesser of either the original cost or its fair market value." Pet.-App's. br. at 7.

Thus, the application of the rule substitutes a fictitious basis for the cost of the asset, if the substitution will result in reducing the amount of the loss that the taxpayer is entitled to recognize on the sale of the asset.

The Department applied this rule to each of the taxpayer's stock sales in 1970 and 1973. As a result, the Department reduced Howick's reported net long-term loss for the 1970 stock transactions from $10,043.82 to

---

[5] All further references to the Department's rule in this opinion are to sub. (2) of the rule.

$596.80[6] and converted the $4,875.57 loss realized on the 1973 stock sales he acquired while a nonresident to a $123.18 gain.[7] The Department disallowed the loss deductions from ordinary income in 1971 through 1973 and a portion of the loss offset for 1973 as well as $403.20 of the loss deduction taken in 1970. Therefore, the De-

---

[6] The Department's calculations are set forth in the following table:

| | Federal Cost Basis | Fair Market Value on June 20, 1970 When Moving Into Wisconsin | Selling Price in 1970 After Moving to Wisconsin | Wisconsin Gain or Loss |
|---|---|---|---|---|
| 1. | $ 5,691.01 | $ 2,913.75 | $ 2,404.82 | $ (508.93) |
| 2. | 4,175.63 | 4,462.50 | 4,531.50 | 69.00 |
| 3. | 1,762.05 | 2,937.50 | 3,717.04 | 779.54 |
| 4. | 1,660.88 | 1,649.65 | 2,044.97 | 384.09 |
| 5. | 1,297.23 | 1,562.50 | 1,450.77 | 0 |
| 6. | 2,499.06 | 2,650.00 | 2,896.19 | 246.19 |
| 7. | 4,893.25 | 6,201.50 | 6,625.70 | 424.20 |
| 8. | 27,243.45 | 21,262.50 | 19,928.47 | (1,334.03) |
| 9. | 2,745.66 | 487.50 | 381.86 | (105.64) |
| 10. | 1,152.45 | 900.00 | 750.10 | (149.90) |
| 11. | 2,379.60 | 1,600.00 | 1,327.82 | (272.18) |
| 12. | 991.15 | 462.50 | 333.36 | (129.14) |
| | | | Net Loss | $ (596.80) |

[7] The Department's calculations regarding the 1973 sales were as follows:

| | Federal Cost Basis | Fair Market Value on June 20, 1970 | Selling Price in 1973 | Wisconsin Gain or Loss |
|---|---|---|---|---|
| 1. | $ 6,222.00 | $ 3,037.50 | $2,707.39 | $ (303.11) |
| 2. | 4,089.25 | 2,275.00 | 1,758.14 | (516.86) |
| 3. | 3,006.15 | 3,000.00 | 3,976.30 | 970.15 |
| | | | Net Gain | $ 123.18 |

partment assessed the additional income taxes noted above.[8]

On November 3, 1975, Howick appealed to the WTAC for abatement of the Department's income tax assessment against him. The WTAC granted the taxpayer's application stating "The [Department's] assessment . . . under review has the ultimate effect of creating an artificial gain where a loss was actually incurred. We can find no statuttory or case law that authorizes such a transformation [creating a gain from a loss] and thus must reject it." The Department's application for a rehearing was denied and it petitioned the circuit court for review of the WTAC's decision, pursuant to secs. 73.015(2) and 227.16, Stats.[9] The circuit court dismissed the Department's petition stating that it was unaware of any Wisconsin law supporting the Department's action and that this application of the Department's rule ". . . is in danger of being contrary to the Constitutional rights of the taxpayer under the XIV Amendment to the U. S. Constitution to equal protection of the laws. It is obvious that the application of the Department's theory could result in tremendous difference of tax liability upon identical Wisconsin taxpayer transactions if everything else were identical except that one was a nonresident of the state at the time of acquisition of the property sold."[10]

The court of appeals affirmed the circuit court's decision upholding the action of WTAC in ruling that it could find no authority in the Wisconsin Statutes or case law

[8] *See:* n. 3 *supra* at p. 276 and accompanying text.

[9] The parties stipulated to review in Washington County Circuit Court. *See:* sec. 227.16(1)(a) and 801.54(3), Stats.

[10] The circuit court's dismissal of the Department's petition for a judgment setting aside the order of the WTAC was procedurally incorrect. After determining that the WTAC was right, the circuit court should have granted judgment affirming the WTAC. *See:* sec. 227.20(2), Stats.

for the Revenue Department's rule that had the "ultimate effect" of creating an artificial gain where a loss was actually incurred. We granted the Department's petition for review of the appellate court's decision.

*Issue*

Did the Department exceed its rule making power set forth in sec. 71.11(24)(a), Stats., in establishing an administrative rule that provides for an adjustment to the basis of stock, in calculating a loss on the sale thereof where the taxpayer acquired the stock while a resident of another state, so as to reduce the loss to reflect a decrease in the value of the stock during the time the taxpayer resided out of state?

The legislature has delegated broad but not unqualified rule making powers to the Department of Revenue for the purposes of administering the Wisconsin income tax law. The Department's rule making authority is found in sec. 71.11(24)(a), Stats.,[11] which provides:

"The department of revenue may make such rules and regulations as it shall deem necessary in order to carry out this chapter."

Recognizing that the Department's rule making power is not unqualified, this court in *Plain v. Harder,* 268 Wis. 507, 511, 68 N.W.2d 47 (1955), held that the Department cannot adopt a rule which amounts to independent legislation. *Id.* at 511. Thus:

"An administrative rule, even of long duration, *may not stand at variance with an unambiguous statute. State*

[11] The income tax statutes applicable during the four year period involved are those contained in the 1969 and 1973 compilations of the Wisconsin Statutes. However, since there is no material difference between the 1969 and 1973 income tax laws with regard to the particular statutes cited in this opinion, all references to ch. 71, Stats., are to the 1969 version of that chapter.

*ex rel. Irany v. Milwaukee County Civil Service Comm.*
(1962), 18 Wis.2d 132, 135, 118 N.W.2d 137; *Plain v.
Harder* (1955), 268 Wis. 507, 68 N.W. (2d) 47. In the
latter case, at page 511, this court said:

" 'The rule-making power does not extend beyond the
power to carry into effect the purpose as expressed in
the enactment of the legislature. *"A rule out of harmony
with the statute is a mere nullity" ' "* (emphasis sup-
plied) *Basic Products Corp. v. Department of Taxation,*
19 Wis.2d 183, 186, 120 N.W.2d 161 (1963).

We believe that sec. 71.02(2)(d) and (e), Stats., pro-
vide the key to the resolution of this controversy. Sec.
71.02(2)(d), Stats., defines Wisconsin taxable income
for individuals as ". . . *Wisconsin adjusted gross income*
less itemized deductions or less the Wisconsin standard
deduction." Wisconsin adjusted gross income means
". . . federal adjusted gross income, with the modifica-
tions prescribed in s. 71.05(1) and (4)." Sec. 71.02(2)
(e), Stats. Thus, we must determine: (1) how federal
adjusted gross income is calculated, and (2) whether any
of the sec. 71.05(1) and (4), Stats., modifications are ap-
plicable in this case. We turn first to the issue of the
computation of "federal adjusted gross income."

The I.R.C. provides that the income tax basis of stock
purchased by the taxpayer is its cost at the time of
purchase. *See:* I.R.C. §§1011, 1012. The gain or loss
from the sale of stock is the difference between the
amount realized, *i.e.,* selling price, and the taxpayer's
cost. I.R.C. §1001. Net long-term loss is computed by
subtracting the long-term gains for the taxable year
from the long-term losses. I.R.C. §1222(8). Given that
Howick calculated the long-term losses resulting from
his stock transactions for the years 1970 and 1973 ac-
cording to these rules, and that the Department does not
contest the taxpayer's federal calculations, the question
becomes whether the Wisconsin income tax statutes,
specifically sec. 71.05(1) and (4), permit the Revenue

Department to modify and alter Howick's federal adjusted gross income for taxing purposes by reducing the basis of the stock acquired before he became a resident.

The Department, in support of their rule, claims that it is authorized by sec. 71.05(1)(a)3 and 71.07(1), Stats. Sec. 71.05(1)(a)3, Stats., allows for an addition modification to the taxpayer's federal adjusted gross income where he suffers a loss under the federal income tax provisions that is not allocable or apportionable to Wisconsin under the situs of income rules contained in sec. 71.07, Stats. Thus, we must look to sec. 71.07, Stats., to determine whether this statute provides for a basis reduction of the nature accomplished by the Department's rule.

The Department is in essence claiming that where stock acquired in another state is sold at a loss in this state the decrease in the value of stock while the taxpayer is a resident of another state is not apportionable to this state. It contends that the portion of sec. 71.07(1), Stats., which provides that loss derived from the sale of stock shall follow the residence of the recipient supports its claim. The question here is whether sec. 71.07(1), Stats., is an apportionment provision.

Sec. 71.07(1) provides:

"**71.07 Situs of income; allocation and apportionment.** (1) For the purposes of taxation income or loss from business, *not requiring apportionment under sub. (2), (3) or (5), shall follow the situs of the business from which derived.* Income or loss derived from rentals and royalties from real estate or tangible personal property, or from the operation of any farm, mine or quarry, or from the sale of real property or tangible personal property *shall follow the situs of the property from which derived.* Corporation income from personal services performed by employes of corporations shall be deemed business income and *shall follow the situs of the business.* Income from personal services and from professions, *shall follow the*

*situs of the services. All other income or loss,* including royalties from patents, income or loss derived from land contracts, mortgages, *stocks,* bonds and securities *or from the sale of similar intangible personal property, shall follow the residence of the recipient,* except as provided in s. 71.07(7). For the purposes of taxation, interest received on state and federal tax refunds when the tax refunded was on business income or property shall be deemed income from business and *shall follow the situs of the business from which derived."* (Emphasis supplied.)

Clearly, the language emphasized in the above quotation indicates that sec. 71.07(1) is a *situs* of income or loss provision and it does not speak to the question of apportionment of loss. Rather, it refers the reader to different subsections of sec. 71.07(1) for the rules on apportionment, *i.e.,* apportionment of business income or loss is governed by sec. 71.07(2), (3) or (5). Thus, sec. 71.07(1) does not support the Department's claim. Indeed, insofar as it provides that the taxpayer's loss on the sale of stock shall follow his residence, it requires that all loss suffered by Howick on his stock sales be recognized for Wisconsin tax purposes as he was a Wisconsin resident at the time of sale. Of course, the computation of the amount of loss is governed by the federal income tax provisions we have discussed above.

Thus, sec. 71.07, Stats., as the Department recognizes, is the only statute dealing with apportionment of income or loss. Sec. 71.07(1) governs the tax treatment of stock sales. This statute does not authorize apportionment of any part of a loss sustained on a stock sale to a jurisdiction other than the residence of the taxpayer at the time of sale. Those subsections of sec. 71.07 which do authorize apportionment apply to business income or loss, not income or loss which follows the residence of the recipient. Therefore, we hold that the Department's

rule is out of harmony with and contrary to the un-ambiguous statutory scheme.

The Department further contends that its rule is supported by the reasoning in three of this court's decisions, to-wit: *Appeal of Seisel*, 217 Wis. 661, 259 N.W. 839 (1935) ; *Falk v. Wisconsin Tax Comm.*, 201 Wis. 292, 230 N.W. 64 (1930), and *State ex rel. Bundy v. Nygaard*, 163 Wis. 307, 158 N.W. 87 (1916).

*Appeal of Seisel, supra,* and *Bundy, supra,* are not in point as those cases involved the calculation of a *gain* from a *single* transaction, the sale of corporate stock, whereas, in contrast, this case deals with the recognition of a *loss* arising from *multiple* transactions engaged in by the taxpayer during the 1970 and 1973 tax years.[12] *Falk* involved sec. 71.02(2) (d), Stats. 1913, which provided in part ". . . for the purpose of ascertaining the gain or loss resulting from the sale . . . of property, real or personal, acquired prior to January 1, 1911, the fair market value of such property as of January 1, 1911, shall be the basis for determining the amount of such gain or loss."

In that case the taxpayer's decedent[13] purchased a number of shares of capital stock before January 1, 1911, the date the Wisconsin income tax law became effective. This stock was purchased at a cost of $471,310 and sold in 1924 for $339,408.96 or a $131,901.04 loss. The Wisconsin Tax Commission found that the value of the stock on January 1, 1911, was $300,000 or $39,408.36 less than the sales price and assessed a tax on the $39,-408.36 figure claiming that it represented a gain realized on the sale. The Commission's authority for this assess-

---

[12] We do not discuss the question of capital gains and express no opinion concerning the same as the question of capital gains was not raised by the taxpayer at any level in the proceedings before the Tax Appeals Commission, the circuit court, the court of appeals or this court.

[13] The taxpayer was the Estate of Charles F. Pfister.

ment of additional income taxes was sec. 71.02(2)(d), Stats. 1913.

This court held that the legislature could not levy a tax on the $39,408.36 as it was not income, gain or profit within the common and ordinary meaning of those terms. It stated:

"The term 'income' as used in the constitution[14] is to be interpreted in accordance with its common, ordinary meaning as understood in every-day life. 'It must be gain or profit and it must be money or something equivalent thereto.' *State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 158 N.W. 87. *Income does not arise from the ordinary fluctuations in the value of property. In order for property to give rise to income there must be a sale thereof in excess of its cost. Miller v. Tax Comm.,* 195 Wis. 219, 217 N.W. 568." (Emphasis supplied.) *Falk, supra* at 294–95.

The court reasoned that the taxpayer had suffered an economic loss because the sale price was less than the purchase price and the statute could not be applied so as to convert this economic loss into a fictitious gain for tax purposes. *Falk* is not applicable, as the case herein does not present the question of whether the economic loss suffered on an *individual* stock transaction is converted into a fictitious gain by the application of any statutes. Thus, *Falk* does not support the Department's rule insofar as it is applicable to the determination of losses at issue in this case.

Although we affirm the decision of the court of appeals, we express a reservation about that opinion. The court of appeals announced a rule that is applicable to the calculation of a *gain* on the sale of stock acquired while the taxpayer was a nonresident. This case is concerned with the proper treatment of a *loss* on the sale of such stock, and thus the appellate court's analysis of

[14] *See:* Wis. Const. art. VIII, sec. 1.

gains on the sale of such stock is *obiter dicta*. Therefore, we disavow this analysis and conclude that the *dicta* does not have any precedential value.

*By the Court.*—The decision of the court of appeals is affirmed and the order of the circuit court dismissing the Department of Revenue's petition for review is modified to a judgment affirming the decision and order of the Wisconsin Tax Appeals Commission.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. The result in this case—that is the bottom line for Howick who moved into Wisconsin and sold stock acquired while a nonresident—is that for Wisconsin income tax purposes he determines his net capital long-term loss by using his federal calculations for the six long-term capital losses and for the six long-term capital gains.[1] I concur with this result. I disagree with the majority's decision to confine the opinion to consideration of the taxpayer's calculation of long-term capital losses and to omit from the opinion consideration of the taxpayer's calculation of long-term capital gains. The majority opinion unfortunately deals with only six transactions or one-half of the issue before the court. I therefore write separately to respond to the parties' contentions which the majority does not consider.

The majority holds that taxpayer Howick, who reported a net long-term capital loss for federal income tax purposes must use, for Wisconsin income tax purposes, the federal calculation of long-term capital loss for each of the six sales which resulted in a loss and which entered into the federal net long-term capital loss. The majority expressly refrains from deciding whether, for Wisconsin

[1] For the sake of simplicity, I refer only to the taxpayer's 12 transactions in 1970. The taxpayer also had three transactions in 1973, two losses and one gain, which raise the same issue as the 1970 transactions.

income tax purposes, Howick must use the federal or state calculation of long-term capital gain for each of the six sales which resulted in gain and which entered into calculating the federal net long-term capital loss.[2] The explanation proffered by the majority is that "the question of capital gains was not raised by the taxpayer at any level in the proceedings before the Tax Appeals Commission, the circuit court, the court of appeals or this court." *Supra*, p. 284, note 12. This statement, I believe, reveals a misunderstanding of the facts and law. A review of the procedural posture of the case and of the briefs and oral argument of the parties demonstrates that the parties dispute the calculation of both long-term capital losses and gains.

From the procedural standpoint, this case is a review of a decision of the court of appeals which reviewed an order of the circuit court which reviewed a decision and order of the Tax Appeals Commission. Sec. 73.015, Stats. 1969. The Tax Appeals Commission, in turn, was reviewing the Department of Revenue's assessment of additional tax to this taxpayer, an assessment based on the Department's audit of the taxpayer's Wisconsin returns.

The audit which triggered the successive reviews in this case is authorized by statute. When conducting an audit, the Department is required by statute to assess

---

[2] Thus the majority disavows that part of the opinion of the court of appeals which discusses the issue of capital gain and labels the discussion as *obiter dicta. Supra*, p. 286.

It is unclear from the majority's opinion whether the taxpayer who reports a net long-term capital gain for federal income tax purposes must use the federal basis for calculating long-term capital losses.

The Internal Revenue Code defines "net long-term capital gain" as "the excess of long-term capital gains for the taxable year over the long-term capital losses for such year" and "net long-term capital loss" as "the excess of long-term capital losses for the taxable year over the long-term capital gains for such year." Sec. 1222(7), (8), I.R.C.

income pursuant to law so that the taxpayer is not over or under assessed. Sec. 71.11(16), (19), (21), (22), Stats. 1969. In accordance with its statutory obligation in performing an audit, the Department applied its rule that for Wisconsin income tax purposes gains and losses are calculated as the difference between the sale price and the fair market value at the time the taxpayer became a Wisconsin resident, hereafter referred to as the Wisconsin rule.[3] The taxpayer had calculated long-term capital gains and long-term capital losses on his 1970 Wisconsin tax return as the difference between the sale price and the cost basis, using what is hereafter referred to as the federal rule. He netted the gains and losses which resulted in a ($10,043.82) net long-term capital loss, which the taxpayer used to reduce Wisconsin taxable income in subsequent Wisconsin returns.

The Department's application of the Wisconsin rule on audit reduced not only the six long-term capital loss calculations (which changes inured to the detriment of

[3] My statement of the Wisconsin rule is in simplified form. The Department explains its rule for calculating gains and losses as follows:

"1. If the selling price after moving into Wisconsin was less than the original cost of the stock when purchased out of state and its fair market value on June 20, 1970, when the taxpayer first moved into Wisconsin, the loss recognized was the difference between the selling price and the lesser of either the original cost or its fair market value.

"2. If the selling price after moving into Wisconsin was greater than the original cost of the stock when purchased out of state and its fair market value on June 20, 1970, when the taxpayer first moved into Wisconsin, the gain recognized was the difference between the selling price and the greater of either the original cost or its fair market value.

"3. If the selling price after moving into Wisconsin was either greater than the original cost of the stock prior to moving into Wisconsin and less than its fair market value on June 20, 1970, or less than that cost and greater than that fair market value, then no gain or loss was recognized."

the taxpayer) but also five of the six long-term capital gain calculations (which changes inured to the benefit of the taxpayer). The Department's recalculations of both the gains and losses inured to the detriment of the taxpayer because the taxpayer's net long-term capital loss was reduced to ($596.80). Both the taxpayer's and the Department's calculations for the gains and losses on the 1970 return are shown in the following table:

| | Federal Cost Basis | Wisconsin Basis: Fair Market Value on 6/70 When Moving into Wisconsin | Selling Price in 1970 After Moving to Wisconsin | Federal Gain or Loss | Wisconsin Gain or Loss |
|---|---|---|---|---|---|
| 1. | $5,691.01 | $2,913.75 | $2,404.82 | $(3,286.19) | $ (508.93) |
| 2. | 4,175.63 | 4,462.50 | 4,531.50 | 355.87 | 69.00 |
| 3. | 1,762.05 | 2,937.50 | 3,717.04 | 1,954.99 | 779.54 |
| 4. | 1,660.88 | 1,649.63 | 2,044.97 | 384.09 | 384.09 |
| 5. | 1,297.23 | 1,562.50 | 1,450.77 | 153.04 | 0 |
| 6. | 2,444.06 | 2,650.00 | 2,896.19 | 452.13 | 246.19 |
| 7. | 4,893.25 | 6,201.50 | 6,625.70 | 1,732.45 | 424.20 |
| 8. | 27,243.45 | 21,262.50 | 19,928.47 | (7,314.98) | (1,334.03) |
| 9. | 2,745.06 | 487.50 | 381.86 | (2,363.20) | (105.64) |
| 10. | 1,152.45 | 900.00 | 750.10 | (402.35) | (149.90) |
| 11. | 2,379.60 | 1,600.00 | 1,327.82 | (1,051.78) | (272.18) |
| 12. | 991.75 | 462.50 | 333.36 | (658.39) | (129.14) |
| | | | | | |
| Totals: | | | | | |
| | $56,436.42 | $47,089.88 | $46,392.60 | $(10,043.82) | $(596.80) |
| | | | | (Net Long-term Capital Loss) | (Net Long-term Capital Loss) |

The Department's reduction in net long-term capital loss increased Howick's taxable income which in turn caused an increase in the taxes owed. Howick was assessed additional tax in the amount of $978.96 by the Department. It is this assessment of $978.96, based on applying the Wisconsin rule to calculating both long-term capital losses and long-term capital gains, to which the taxpayer objected and of which he sought review in the Tax Appeals Commission.[4] If the Department's calculations were correct as to both gains and losses or as to losses only, the taxpayer would owe additional taxes;

[4] Before the taxpayer can petition for review in the Tax Appeals Commission the taxpayer must apply to the Department for abatement of the assessment. The taxpayer made application in this case, and his application was denied. Sec. 71.12, Stats. 1969.

if the Department's calculations were correct as to the gains only, the taxpayer might be entitled to additional loss carryovers and reduced tax liability. If the Department's calculations were erroneous as to both gains and losses the taxpayer's return would be accepted as filed and he would neither owe additional taxes nor be entitled to further modifications of his tax returns or tax liability. In this case the taxpayer has taken the latter position and has maintained it throughout the course of this litigation, challenging at every stage of the proceeding the Department's calculations of gains as well as losses.[5]

A brief review of the file in this case demonstrates the taxpayer's consistent position. In his petition to the Tax Appeals Commission[6] and in his statements during the hearing before the Tax Appeals Commission Howick objected to the Department's use of the Wisconsin rule for calculating long-term capital gains and long-term capital losses. Howick's brief in the court of appeals, upon which he relied in this court, describes the issue before the court in the following terms which encompass the question of the validity of the application of the Wisconsin rule to both long-term capital gains and losses: "Did the Revenue Department have the legal authority to create a separate income tax structure for taxpayers that purchased stock prior to moving into Wisconsin and then sold the stock after becoming domiciled in the

---

[5] Each party in the case at bar has taken a position as to calculating long-term capital gains which is against his or its best interests. The taxpayer insists that the federal rule is applicable to his long-term capital gain which results in his reporting a smaller loss and paying higher taxes. The Department of Revenue insists that the Wisconsin rule is applicable to the taxpayer's long-term capital gain which results in reducing taxable income and taxes.

[6] To preserve his challenge to the assessment, the taxpayer filed, as he was required by law, a petition with the Tax Appeals Commission stating his objections to the Department's assessment. Sec. 73.01(5), Stats. 1969; Tax Appeal Comm'n, Wis. Admin. Code TA 1.03.

state?" Howick's brief, p. 1. At oral argument Howick argued that the Department did not have the power, under the statutes or the cases, to deviate from the federal rule for calculating long-term capital gains and losses. Indeed Howick maintained at all the proceedings that Wisconsin's imposing a different tax law on "former non-residents" and on "life long Wisconsin residents" contravenes the fourteenth amendment of the United States Constitution.

For its part, the Department has consistently maintained in the Tax Appeals Commission, in the circuit court, in the court of appeals and in this court that the issue in the case is "the proper method for determining capital gains or losses on stock acquired by nonresidents and sold by them as Wisconsin residents . . . ." Department's brief, pp. 2–3, 8.

Thus Howick and the Department of Revenue agree as to the question to be decided; they disagree as to the answer. The taxpayer argues that the Department has no authority to use the fair market value of the asset as of the date the owner became a resident of Wisconsin as a basis for calculating gain or loss on disposition of an intangible capital asset. The Department contends that the state constitution, as interpreted by this court, requires the Department to calculate and tax gains or losses using a basis dependent on the fair market value of an intangible capital asset as of the date the taxpayer established Wisconsin residence. The Tax Appeals Commission, the circuit court, and the court of appeals understood that the dispute between the parties is how to calculate the tax liability of this taxpayer arising from the 12 transactions.[7]

---

[7] The parties' dispute is clearly one of law. This court is therefore not bound by the determination of the Tax Appeals Commission, the circuit court or the court of appeals. *H. Samuels Co. v. Dept. of Revenue*, 70 Wis.2d 1076, 1083, 236 N.W.2d 250 (1975).

The Wisconsin statutes do not set forth any modification, addition or subtraction relating to either the six long-term capital gains or six long-term capital losses. I therefore conclude that there is no statutory authority for the Wisconsin rule requiring recalculation of gain or losses on the disposition of capital assets by a resident who had acquired the assets while a nonresident. Although the majority opinion might lead the reader to think otherwise, the Department does not seriously or strenuously maintain that its authority to adopt the Wisconsin rule in issue rests on any express statutory language. The Department's chief argument is that the Wisconsin rule is required under this court's interpretation of the state constitution. The Department asserts that sec. 1, art. VIII of the Wisconsin Constitution,[8] as interpreted by this court, requires the state to calculate taxable income using only gains and losses which accrued after the taxpayer became a Wisconsin resident and which do not exceed the economic gains and losses which the taxpayer actually incurred.

I turn to the three cases which the Department advances as the source of the Wisconsin rule.

*State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 158 N.W. 87 (1917), is the earliest case. In *Bundy* this court held that the word "income" as used both in sec. 1, art. VIII of the Wisconsin Constitution and in the statutes does not include the increase in value of stocks prior to January 1, 1911, the effective date of the first Wisconsin income tax law. The court viewed the increase in value prior to 1911 as "capital, or in other words, property; its status was fixed; no part of it could be made into income by legislative enactment." 163 Wis. at 310. Reason-

---

[8] Sec. 1, art. VIII, Wis. Const., provides *inter alia:* "Taxes may also be imposed on incomes . . . which taxes may be graduated and progressive, and reasonable exemptions may be provided."

ing that this pre-1911 gain had become capital, the court refused to allow the state to tax gain which had accrued (but which had not been realized) prior to the effective date of the income tax law. The effect of *Bundy* was that, for the purpose of calculating gain, the "basis" of stock acquired prior to January 1, 1911, became its fair market value as of January 1, 1911.

After *Bundy* the income tax statute was amended to establish the fair market value as of January 1, 1911, as the basis to be used in ascertaining the gain or loss resulting from the sale of property acquired before January 1, 1911. *See* sec. 71.03 (1) (g), Stats. 1969.

*Falk v. Wisconsin Tax Commission*, 201 Wis. 292, 230 N.W. 64 (1930), the second case upon which the Department relies, involved a disposition of stock which was acquired before January 1, 1911, for the price of $471,310, which had a fair market value on January 1, 1911, of $300,000, and which was sold in 1924 for $339,408.96. Applying the *Bundy* rule and the new statute, the state concluded there was a gain of $39,408.96, the sale price less the fair market value as of January 1, 1911. This court, however, refused to allow the imposition of an income tax on this "gain", concluding that the taxpayer had derived no economic income in this transaction. The court correctly said that there was no gain or profit from the sale—there was a loss, the individual having bought stock at $471,310 and having sold it at $339,408.96. The term "income" as used in the constitution, reasoned the court, is to be interpreted in accordance with its common, ordinary meaning. Common sense tells us, said the court, that the taxpayer did not make a profit. In effect, the court held that income "in the constitutional sense" results from a sale of property acquired before 1911 only when the property is sold in 1911 or thereafter for more than the purchase price. The court said that the value of the property on January 1, 1911 "becomes material

only when a gain or income is revealed by a comparison of the purchase price (prior to 1911) with the sale price." The court's reasoning in *Falk* was apparently based, not on the statutes, but on the meaning of the word income as used in the Wisconsin Constitution.

The third case to which the Department refers is *Appeal of Seisel*, 217 Wis. 661, 259 N.W. 839 (1935). In *Seisel* the donor, a resident of Pennsylvania, had acquired stock at a cost of $7,428.46 and had made a gift of the stock to a Wisconsin resident. On the date of the gift the stock was worth $25,908.30, and the donee, a Wisconsin resident, immediately sold the stock for this amount. The state sought to impose a tax on the donee on a gain of $18,579.84 (the sale price less the cost), relying on the Wisconsin statute which provided that a donee has the same basis as the prior owner. This court held that "Wisconsin had no jurisdiction of the property or the donor at the time the increase in value above the donor's cost occurred. It had no jurisdiction to attempt to reach that as income in any way . . . . Since the donor at all of the times in question was a resident of the State of Pennsylvania, and since she was the owner of the stock in question when its increase in value attached, we hold that the disputed item of $18,579.84 was not properly taxable income . . . ." 217 Wis. at 667.

*Bundy* and *Falk* are concerned with the application of a tax law to events which occurred before the effective date of the law, while *Seisel* involved a gift situation. All three involve the calculation and taxation of gain. In each case the court limited the state's power to tax by interpreting narrowly the word "income" as used in the Wisconsin Constitution. The Department interprets these three cases broadly and fashions from them a constitutional theory of taxation applicable to the taxpayer who moves into Wisconsin and sells an intangible capital asset acquired while a nonresident. The Department reads the

cases to mean that the State of Wisconsin does not have jurisdiction to tax that part of the gain or to allow that part of the loss attributable to an increase or decrease in value of the property occurring before the taxpayer became a Wisconsin resident.[9] Consequently the Department perfected the Wisconsin rule presently in dispute to avoid both taxation of long-term capital gains and allowance of long-term capital losses to the extent that either accrued while the taxpayer was a nonresident.

---

[9] The Department of Revenue has interpreted the principles set forth by this court in *Bundy, Falk* and *Seisel* in adopting its rule for calculating gains and losses for the "former nonresident," reasoning along these lines:

(1) In *Bundy* this court said that the State of Wisconsin has no jurisdiction to tax gain arising before the effective date of the income tax law. The state can tax only gain accruing after the effective date of the tax law.

(2) In *Falk* the court said that the maximum gain to be taxed is the actual economic gain when gain is recalculated using a basis adjusted to the effective date of the tax law.

(3) When a person moves into the State of Wisconsin, the effective date of the Wisconsin income tax laws for the taxpayer is the date of establishment of residence.

Therefore the adjustments made to calculate gains accruing before and after 1911 under *Bundy* and *Falk* should be used to calculate gains and losses taxed to the "former nonresident" on the property acquired before moving into Wisconsin and sold after the date of residence.

(4) In *Seisel* this court said that the State of Wisconsin has no jurisdiction to tax a Wisconsin resident donee for gain arising from an increase in value of intangible property held outside the state by a nonresident donor.

A person moving into the State of Wisconsin with intangible property appreciated in value is analogous to the resident donee who receives a gift of property which appreciated while being owned by a nonresident. Therefore the adjustments made under *Seisel* to eliminate taxing gain accruing before the property was owned by a donee Wisconsin resident should be used to calculate gains and losses taxed to a "former nonresident" on the property acquired before moving into Wisconsin and sold after the date of residence.

Even if I were to accept as correct the Department's assertion that these three cases are applicable to the calculation of long-term capital gain on the disposition of an intangible capital asset by a taxpayer who moved into the state before disposition, I would not conclude that either the constitution or the case law supports the Department's adoption of the Wisconsin rule as it relates to capital losses or the Department's application of the Wisconsin rule as it relates to capital gains to this taxpayer who has reported a federal net long-term capital loss.

The Department asserts that because the state's constitutional power to tax is limited to gains which accrue while the taxpayer is a resident of the state, Wisconsin must limit deductions for long-term capital losses to those which accrue while the owner of the intangible capital asset is a resident of this state. This reasoning has an equitable and symmetrical sound to it; if the state is limited in the gains it taxes, it seems fair to limit it similarly in the losses it allows.

Parallel treatment of gains and losses is, however, not required by these cases or by the Wisconsin Constitution. Generally deductions are said to be matters of legislative grace. It is Wisconsin's prerogative to tax less income than it has the constitutional power to tax by allowing a taxpayer to deduct the larger long-term capital loss calculated by using the federal rule. Because neither the cases nor the constitution requires the taxpayer to recognize only losses accrued while the taxpayer is a resident, I conclude that the Department's rule modifying the federal calculation of long-term capital losses is not required by the constitution or authorized by the statutes, and therefore the Wisconsin rule as applicable to long-term capital losses is invalid.

The Department asserts that because the state's power to tax is limited by the constitution to gains which accrue while the taxpayer is a resident of the state, Wisconsin must exclude from Wisconsin taxable income that portion

of the long-term capital gain which is attributable to the period when the taxpayer was not a resident of this state. Some would say that the defect in the Department's reasoning is that the use of the federal rule to calculate long-term capital gain when the taxpayer incurs a net long-term capital loss does not result in taxation of gain which accrued before the taxpayer became a Wisconsin resident. Instead the gains which accrued while the taxpayer was a nonresident are used to offset a portion of the out-of-state long-term capital losses which the state has allowed the taxpayer to claim.[10]

More importantly, however, I reject the Department's assertion that the three cases are applicable to the calculation of long-term capital gain on the disposition of an intangible capital asset by a taxpayer who moved into the state before the disposition. The three cases do not establish a definition of income necessarily applicable to long-term capital gain realized by a former nonresident. Each of the three cases is distinguishable on its facts from the gain transactions involved in the instant case. *Bundy* relates to the taxability of income accruing before the effective date of an income tax law, while the instant case deals with taxation of income of a taxpayer who moves into this state and becomes subject to the Wisconsin tax law.

The fact situation involved in *Falk* is not involved in any of the transactions in the instant case, and at oral argument the Department conceded that the *Falk* case was not significant to the case at bar.[11]

---

[10] I find this argument somewhat disingenuous because the ultimate effect on the taxpayer of offsetting gain which accrued before he became a resident against losses is that the taxpayer has more taxable income than if the taxpayer reported only gains accruing after he became a resident.

[11] In *Falk* the federal cost basis is the highest amount, the fair market value is the lowest amount; and the sale price figure falls between the two figures. The court's striking down the Department's rule for calculating capital gain in the *Falk* situation is not involved in this case. *Falk* involves neither the Department's capital gain nor capital loss rule—it involves a "special circum-

The facts of *Seisel* are also distinguishable from those in the instant case. *Seisel* involved two individuals (a nonresident donor and a resident donee), a gift (which could be viewed, but generally is not, as an event of realization), and the fiction of transferred basis. This case involves one taxpayer, a taxpayer who changed his residence, and a taxpayer who has a cost basis, not a transferred basis.

Even if *Seisel* and *Bundy* are still good law, the definition of income contained in those cases should be confined to the facts of those cases, namely a gift, and the retroactive effect to be given to a tax law; these cases need not be extended to govern a taxpayer who moves from one state to another. *See* sec. 71.03(1)(g), Stats. 1969.

Moreover, it is questionable whether the Department's broad interpretation of these cases and the Department's narrow view of this state's constitutional power and jurisdiction to tax are good constitutional doctrine today.

*Bundy* has been criticized by courts and commentators for defining income too narrowly.[12] In more recent cases, state courts have upheld the state's power to impose a tax on gain realized after the effective date of the tax law even though some of the gain represents the enhancement of value accruing prior to the adoption of the tax statute.[13] Courts in several jurisdictions have also upheld the state's power to tax income earned or gain

stance" that calls for application of the third part of the Wisconsin rule set forth at note 3, *supra*. See transaction 5 in the Table on p. 289.

[12] *See* Comment, *The Validity of Pennsylvania's Taxation of Net Gains Derived From Disposition of Property,* 76 Dickinson L. Rev. 555, 570 (1971).

[13] *See generally, City Nat'l Bank of Clinton v. Iowa State Tax Comm.,* 251 Iowa 603, 102 N.W.2d 381, 386 (1960); *Kellems v. Brown,* 163 Conn. 478, 313 A.2d 53, 68, 69 (1972), *app. dis.,* 409 U.S. 1099, 93 S. Ct. 911 (1973); *Altsuler v. Peters,* 190 Neb. 113, 206 N.W.2d 570, 579 (1973); *Dept. of Revenue v. Leadership Housing, Inc.,* 343 So.2d 611 (Fla. 1977).

accrued before the taxpayer became a resident of that state, but which was realized by the taxpayer after the taxpayer became a resident of the state.[14] The theory expressed in these more recent cases is that a taxpayer is taxed on the occurrence of a particular event, *e.g.* on the disposition of the asset. When an intangible capital asset appreciates in value, no income is realized, recognized, or taxed. Only when the taxpayer disposes of the assets is there realized and taxable income. Therefore any tax imposed on a taxpayer who disposes of an asset while a a resident of the state is a tax imposed on the income of a resident. Such a tax is imposed on income attributable to the period of residency; it is not a tax imposed on income attributable to a period of nonresidency.

For the reasons I have set forth, I would hold that the taxpayer in the instant case must use the federal rule, not the Wisconsin rule, to calculate the six long-term capital gains and the six long-term capital losses for Wisconsin income tax purposes.

I am authorized to state that Justice NATHAN S. HEFFERNAN and Justice WILLIAM G. CALLOW join in this concurring opinion.

---

[14] *See, e.g., Denniston v. Dept. of Rev.*, 287 Ore. 719, 601 P.2d 1258, 1260 (1979); *Hardy v. State Tax Comm'r*, 258 N.W.2d 249, 253 (N.D. 1977); *Evans v. Comptroller of Treas.*, 273 Md. 172, 328 A.2d 272 (Ct. App. 1974); *Olvey v. Collector of Revenue*, 233 La. 985, 99 So.2d 317 (1957).

For a discussion of Wisconsin's power to tax income, *see McCarty v. Tax Comm.*, 215 Wis. 645, 255 N.W. 913 (1934); *Greene v. Tax Comm.*, 221 Wis. 531, 266 N.W. 270 (1936); *Messinger v. Tax Comm.*, 222 Wis. 156, 267 N.W. 535 (1936); *Scobie v. Tax Comm.*, 225 Wis. 529, 275 N.W. 531 (1937); *Rahr v. Smith*, 243 Wis. 497, 11 N.W.2d 355 (1943). For a discussion of taxing gains in the period in which the gains are realized and not in the period during which they accrued and not in the period to which their reporting was deferred, *see SRG Corp. v. Dept. of Revenue*, 365 So.2d 687 (Fla. 1978); *Grote v. State Tax Comm'r*, 251 Ore. 251, 445 P.2d 129 (1968); *Denniston v. Dept. of Revenue, supra.*