ESTATE OF Robert V. GENRICH and Kathy Genrich, Plaintiffs-Appellants-Petitioners,

BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, Involuntary-Plaintiff,

v.

OHIC INSURANCE COMPANY, Wisconsin Injured Patients & Family Compensation Fund, Meriter Hospital, Inc., Margaret Bjelde, R.N., Shelly White, O.R.T., Kimberly A. Brown, O.R.T., David Melnick, M.D., Brenda Satchie, M.D., University of Wisconsin Hospital and Clinics Authority and Dawn M. Shaw, O.R.T., Defendants-Respondents.

Supreme Court

*No. 2007AP541. Oral argument February 3, 2009.
—Decided July 7, 2009.*

2009 WI 67

(Also reported in 769 N.W.2d 481.)

For the plaintiffs-appellants-petitioners there were briefs by *Jason T. Studinski* and *Kammer & Studinski Chartered,* Portage, and oral argument by *Jason T. Studinski.*

For the defendants-respondents there was a brief by *David J. Pliner* and *Corneille Law Group, LLC,* Madison, and oral argument by *David J. Pliner.*

An amicus curiae brief was filed by *Robert L. Jaskulski, Linda M. Meagher,* and *Habush Habush & Rottier, S.C.,* Milwaukee, on behalf of the *Wisconsin Association for Justice.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review an unpublished decision[1] of the court of appeals that affirmed a decision of the circuit court[2] granting summary judgment in favor of OHIC Insurance Company and other defendants (collectively, OHIC). Our review requires us to address two issues: (1) whether the claim of the Estate of Robert V. Genrich (the estate)

---

[1] *Estate of Genrich v. OHIC Ins. Co.,* No. 2007AP541, unpublished slip op. (Wis. Ct. App. May 22, 2008).

[2] The Honorable Daniel S. George of Columbia County presided.

for "injury" to Robert Genrich (Robert) that resulted in his death and allegedly was caused by medical negligence is precluded by Wis. Stat. § 893.55(1m)(a) (2005–06)[3] as untimely-filed; and (2) whether Kathy R. Genrich's (Kathy) wrongful death claim based on Robert's death accrued on the date of Robert's "injury."

¶ 2. Because we conclude that Robert suffered an "injury" for purposes of Wis. Stat. § 893.55(1m)(a) when he experienced a "physical injurious change," and that the "physical injurious change" occurred more than three years prior to the filing of the estate's claim, we conclude that the estate's claim is time-barred by § 893.55(1m)(a). We further conclude that Kathy's wrongful death claim based on Robert's death that allegedly was caused by medical negligence accrued on the same date as the estate's claim. Therefore, it, too, is precluded by § 893.55(1m)(a). Accordingly, we affirm the decision of the court of appeals that affirmed the circuit court's decision granting summary judgment in favor of OHIC.

## I. BACKGROUND

¶ 3. On July 23–24, 2003, Robert underwent surgery to have an ulcer repaired. The surgery appeared to have been successfully completed. However, Robert soon developed a fever and his white blood cell count became elevated, suggesting an infection. On August 8, 2003, it was determined that a sponge had been left inside Robert's abdominal cavity at the conclusion of the surgery on July 24, 2003, and that the sponge probably was the source of the infection. That same day, a second surgery was performed and the sponge was

---

[3] All further references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

removed. Unfortunately, in the days following the second surgery, Robert's health did not improve, and on August 11, 2003, he died from sepsis allegedly associated with the retained sponge.

¶ 4. On August 9, 2006, the estate and Kathy filed suit against the doctors and support staff involved in Robert's surgery, as well as OHIC Insurance Company and others. The estate alleged medical negligence in Robert's care and treatment, and made claims for damages. Kathy sued for wrongful death, also based on alleged medical negligence in Robert's care and treatment. OHIC moved for summary judgment, arguing that both the estate's and Kathy's claims were barred by the medical negligence statute of limitations, Wis. Stat. § 893.55(1m)(a). Section 893.55(1m) provides:

> [A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
>
> (a) Three years from the date of the injury, or
>
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.[4]

¶ 5. The estate and Kathy countered OHIC's motion by arguing that (1) under *Paul v. Skemp,* 2001 WI 42, 242 Wis. 2d 507, 625 N.W.2d 860, Robert's "injury"

---

[4] There is no argument that Wis. Stat. § 893.55(1m)(b) applies instead of § 893.55(1m)(a). Under § 893.55(1m)(a), the date of "injury" is the operative inquiry, rather than the date of the discovery of the injury under § 893.55(1m)(b).

did not occur until on or after August 9, 2003, because his condition did not become irreversible until at least that date, and the claims were therefore timely, having been filed within three years of such "injury"; (2) under *Miller v. Luther,* 170 Wis. 2d 429, 489 N.W.2d 651 (Ct. App. 1992), even if the estate's survival action was time-barred, the statute of limitations on Kathy's wrongful death claim did not start to run until the date of Robert's death, August 11, 2003, and her claim was therefore timely, having been filed within three years of Robert's death; and (3) even if either or both of the claims were not timely asserted, the defendants were estopped from raising the statute of limitations because an OHIC claims adjuster had told their attorney that the claims would not expire until August 13, 2006.

¶ 6. The circuit court granted OHIC's motion, concluding that, under *Fojut v. Stafl,* 212 Wis. 2d 827, 569 N.W.2d 737 (Ct. App. 1997), Robert suffered an "injury" triggering the statute of limitations no later than August 8, 2003, when the second surgery to remove the sponge occurred. As a result, the circuit court dismissed the estate's claim, filed on August 9, 2006, as untimely under Wis. Stat. § 893.55(1m)(a).

¶ 7. The circuit court also rejected Kathy's argument that her wrongful death claim accrued on the date of Robert's death. Instead, the court concluded that *Estate of Hegarty v. Beauchaine,* 2001 WI App 300, 249 Wis. 2d 142, 638 N.W.2d 355, had decided that Wis. Stat. § 893.55(1m)(a) was the operative statute of limitations for wrongful death claims based on medical negligence, and that those claims run from the date of the underlying "injury." As a result, because Kathy's claim was filed more than three years after Robert's "injury," her claim was time-barred by § 893.55(1m)(a).

¶ 8. Finally, the circuit court rejected the plaintiffs' estoppel argument. The court concluded that the plaintiffs' reliance on the statements of an insurance claims adjuster, in deciding not to file earlier, was not reasonable. The court of appeals affirmed the circuit court's decision for largely the same reasons expressed by the circuit court.[5]

¶ 9. We granted review and now affirm.

## II. DISCUSSION

A. Standard of Review

██

¶ 10. This case requires us to review the circuit court's decision granting OHIC's motion for summary judgment. We review a decision on a motion for summary judgment independently, employing the same methodology as the circuit court. *Blunt v. Medtronic, Inc.*, 2009 WI 16, ¶ 13, 315 Wis. 2d 612, 760 N.W.2d 396 (citing *Acuity v. Bagadia*, 2008 WI 62, ¶ 12, 310 Wis. 2d 197, 750 N.W.2d 817). Resolution of the questions presented requires us to interpret and apply Wis. Stat. § 893.55(1m)(a). "The interpretation and application of a statute to an undisputed set of facts are questions of law that we review independently." *McNeil v. Hansen,* 2007 WI 56, ¶ 7, 300 Wis. 2d 358, 731 N.W.2d 273

---

[5] For purposes of our review, we note that the estate and Kathy no longer assert that OHIC is estopped from arguing that the statute of limitations precludes their claims based on the statements of the insurance claims adjuster. Instead, they have limited their arguments to the two issues we enumerated: (1) whether Wis. Stat. § 893.55(1m)(a) time-bars the estate's medical negligence claim, and (2) whether § 893.55(1m)(a) time-bars Kathy's wrongful death claim.

(citing *Rocker v. USAA Cas. Ins. Co.*, 2006 WI 26, ¶ 23, 289 Wis. 2d 294, 711 N.W.2d 634; *State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774 (1996)).

B. Medical Negligence

¶ 11. The estate's survival action is a claim for medical negligence asserted on Robert's behalf. The parties do not dispute, and we agree, that Wis. Stat. § 893.55(1m)(a) is the applicable statute of limitations for this claim, and that the claim accrued on the date that Robert sustained an "injury" as that term is used in the statute. Where the parties differ is with respect to the meaning of the term "injury."

¶ 12. The statute does not define "injury." However, the parties point to decisions by Wisconsin courts that purportedly support their proposed interpretations of the term. The estate and Kathy cite to our decision in *Paul* to argue that an injury does not occur under Wis. Stat. § 893.55(1m)(a) until the underlying condition is no longer treatable. That is, only after a medical condition has become irreversible does a claim accrue. Because Robert's condition did not become irreversible until on or after August 9, 2003, the estate argues that its claim was timely filed.

¶ 13. In *Paul,* we determined when an actionable "injury" based on medical negligence for misdiagnosis occurred, thereby causing the claim to accrue. *Paul,* 242 Wis. 2d 507, ¶¶ 12–13. We concluded that the estate's claim accrued, at the latest, on the date that the decedent's undiagnosed arteriovenous malformation ruptured. *Id.*, ¶ 45. The estate and Kathy cite the

562

following language in *Paul* in support of their argument that an "injury" triggering the limitations period does not occur until the patient's condition becomes untreatable or irreversible:

> That actionable *injury* which resulted from the alleged misdiagnosis occurred either at the time that [the arteriovenous malformation] AVM ruptured, or at the time that [the] AVM could no longer be treated. . . .
>
> . . . .
>
> . . . [B]ased on the information presented, the injury that resulted from the alleged misdiagnosis occurred when the rupture of the AVM in [decedent]'s brain happened . . ., or it occurred at that point . . . when, more likely than not, [decedent]'s AVM could not have been successfully treated.

*Id.* at ¶¶ 45, 53. In this case, the estate and Kathy contend that Robert's condition did not become untreatable until on or after August 9, 2003, resulting in the estate's medical negligence claim being timely-filed on August 9, 2006.

¶ 14. OHIC, on the other hand, asserts that Robert sustained an "injury" on the date he first suffered a "physical injurious change," as that term was used by the court of appeals in *Fojut*. In *Fojut*, the court of appeals determined the date of "injury" for a woman who had undergone tubal ligation surgery. *Fojut*, 212 Wis. 2d at 830–31. The surgery was unsuccessful, and the woman subsequently became pregnant. *Id.* at 829. The court decided that the date of the plaintiff's unwanted conception, rather than the date of the surgery, was the "injury" that triggered Wis. Stat. § 893.55(1m)(a). The court explained:

> There is no evidence that on the date the tubal ligation was performed that [the plaintiff] suffered any physical

injury. The purpose of the surgery was to render [the plaintiff] infertile—to avoid pregnancy. There was no physical injurious change to [the plaintiff]'s body until she became pregnant. . . . Using this date as the date of injury, [the plaintiff]'s claim was untimely because the complaint was not filed within three years.

*Id.* at 831.

¶ 15. OHIC contends that Robert suffered an injury on July 24, 2003, when the sponge was left in his abdominal cavity and he developed an infection. This was a "physical injurious change" to Robert's body, as that term was used in *Fojut.* In the alternative, OHIC asserts that any "physical injurious change" could have occurred no later than August 8, 2003, when Robert underwent the second surgery to remove the sponge. As a result, because the claims were filed on August 9, 2006, and more than three years had passed, the estate's and Kathy's claims are time-barred by Wis. Stat. § 893.55(1m)(a).

██

¶ 16. In response, the estate and Kathy assert that *Paul* and *Fojut* are inconsistent, and that their interpretation of *Paul* should control the questions presented here. We disagree. Although the estate and Kathy have selected the language from *Paul* most favorable to their interpretation, *Paul* and *Fojut* are entirely consistent with one another. Neither of them concludes that an injury must be untreatable or irreversible to trigger the limitations period imposed by Wis. Stat. § 893.55(1m)(a). As we noted in *Paul,* a condition need not be untreatable before an "injury" occurs; rather, an "actionable injury arises when the [negligent act or omission] causes a greater harm than [that which] existed at the time of the [negligent act or omission]." *Paul,* 242 Wis. 2d 507, ¶ 25. This language

articulates the same concept set forth by the court of appeals' decision in *Fojut,* i.e., that an "injury" does not occur until there is a "physical injurious change."

¶ 17. Furthermore, our conclusion, that the determination of a "physical injurious change" is the appropriate benchmark for establishing the date of "injury" under Wis. Stat. § 893.55(1m)(a), is consistent with the facts set forth in *Paul.* In *Paul,* the rupturing of the plaintiff's arteriovenous malformation was the first "physical injurious change" experienced by the plaintiff following the doctor's negligent misdiagnosis. There was no point prior to that rupture where "a greater harm than existed at the time of the misdiagnosis" occurred. *Id.* Even though plaintiff's condition was irreversible once the arteriovenous malformation ruptured, that was not the reason that the rupture was the "injury." Rather, it was the "injury" because there was no point prior to that rupture in which the plaintiff experienced a "physical injurious change." Therefore, we reject plaintiffs' contention that *Paul* and *Fojut* are in conflict.

¶ 18. Applying *Paul* and *Fojut* to this case, we conclude that Robert's "injury" that triggered the three-year limitations period in Wis. Stat. § 893.55(1m)(a) occurred on July 24, 2003. It was on that date that an infection-producing sponge was left in Robert's abdomen, which eventually caused his death.[6] The second

[6] The estate and Kathy argue that because OHIC set forth several potential dates on which Robert's injury could have occurred, and because the parties' legal theories produce disputed dates of "injury," there are disputed questions of material fact here that preclude summary judgment.

We disagree. While it is true that summary judgment may be granted only where there are no disputed issues of material fact, *Oneida County Dep't of Social Services v. Nicole W.,* 2007

surgery performed on August 8, 2003, while it may have inflicted an additional injury on Robert because he was subjected to more surgery, mainly confirmed Robert's injury from the first surgery.

¶ 19. It was the negligence during the first surgery that resulted in an infection-producing sponge being present in Robert's abdomen. Stated otherwise, by leaving the sponge inside of Robert, the doctors "cause[d] a greater harm than existed at the time of the [negligent act]." *Paul,* 242 Wis. 2d 507, ¶ 25. Robert suffered an injury when the doctors left an infection-

WI 30, ¶ 8, 299 Wis. 2d 637, 728 N.W.2d 652 (citing Wis. Stat. § 802.08(2)), and there may be factual disputes here, none of those disputes relate to *material* facts. All of the potential dates for Robert's "injury" suggested by OHIC occurred before August 9, 2003, and therefore, even if it is legitimately disputed on which of those dates Robert sustained an "injury" triggering the statute of limitations, all of those dates suffice to cause the estate's claim to be time-barred by Wis. Stat. § 893.55(1m)(a). Therefore, any factual dispute about which date should be applied is not material. *Maroney v. Allstate Ins. Co.,* 12 Wis. 2d 197, 202, 107 N.W.2d 261 (1961) (concluding that disputed facts that are "immaterial to the questions of law presented . . . do not afford a basis for denying summary judgment" (citing *Hafemann v. Korinek,* 266 Wis. 450, 63 N.W.2d 835 (1954))).

Furthermore, although the parties' various legal theories set forth different dates for Robert's "injury," our adoption of one legal theory over another, and thereby one date of "injury" over another, does not resolve a disputed question of fact. The historic facts are not disputed; it is only the legal consequences that flow from those facts that are subject to dispute. Therefore, our choice of a date resolves a disputed question of law, for which summary judgment is entirely appropriate. *Snider v. N. States Power Co.,* 81 Wis. 2d 224, 230, 260 N.W.2d 260 (1977) (explaining that summary judgment shall be rendered where "no material facts are in dispute and only a question of law is presented" (citing Wis. Stat. § 802.08(2))).

producing sponge in his abdominal cavity, and the sponge was not there prior to the doctors' negligent conduct.

¶ 20. Accordingly, the presence of an infection-producing sponge in Robert's abdominal cavity is the type of "physical injurious change" discussed in *Fojut,* and our conclusion that it constitutes an "injury" is consistent with *Paul.* When the doctors negligently left a sponge inside of Robert, which caused the sepsis that resulted in his death, he sustained an "injury" that triggered Wis. Stat. § 893.55(1m)(a)'s three-year limitations period.[7] Because this injury occurred more than

---

[7] Justice Bradley purposefully misinterprets the majority opinion, asserting that it "confuses the law" and is subject to "additional infirmities." Justice Bradley's concurrence/dissent, ¶ 53. However, what Justice Bradley misses is that this case arises from an occurrence when negligence and injury happened simultaneously, as is often the case. For example, consider the tortfeasor who negligently stumbles while carrying a pot of boiling water which he pours on the victim. The negligence (pouring boiling water on the victim) and the injury (scalding the victim) occur simultaneously.

The negligence and injury in this case arise in a similar fashion. That is, the doctors left a sponge in Robert's abdominal cavity. This was a negligent act. This negligent act resulted in an infection-causing sponge being present in Robert's abdominal cavity. The presence of an infection-causing sponge in Robert's abdominal cavity was an injury. Accordingly, the negligent act occurred simultaneously with the injury in this case.

Justice Bradley accuses the majority opinion of impermissibly finding facts. *id.,* ¶ 58. This stems from her fundamental misunderstanding of the conclusions we reach. Contrary to her assertions, we do not conclude that the injury in this case was the infection. *See id.* Rather, we conclude that it was the *presence* of the infection-causing sponge in Robert's abdomen that was the injury.

567

three years prior to August 9, 2006, when the claim was filed, we conclude that the estate's claim is time-barred by § 893.55(1m)(a).

█

¶ 21. Furthermore, accepting the estate's and Kathy's definition of "injury" would contradict the maxim that " '[a] later injury from the same tortious act does not restart the running of the statute' of limitations." *Fojut,* 212 Wis. 2d at 832 (quoting *Segall v. Hurwitz,* 114 Wis. 2d 471, 482, 339 N.W.2d 333 (Ct. App. 1983)). That is, even though an infection-producing sponge was present inside of Robert's abdomen as a result of the first surgery, the estate and Kathy urge us to restart the statute of limitations by concluding that Robert sustained an injury only when his condition became irreversible. We decline to do so.

The circuit court considered a number of different events that might have constituted an injury to Robert, but did not expressly find the date upon which Robert's injury occurred. Instead, the circuit court found that August 8, 2003, the date of Robert's second surgery, was the last possible date on which he could have suffered an injury triggering Wis. Stat. § 893.55(1m)(a). Because the claims were filed more than three years after this date, the court held that they were barred.

However, it is an undisputed fact that the infection-causing sponge was present in Robert's abdomen on the date his first surgery concluded, and this is the date on which we conclude that Robert suffered an injury. We do not, contrary to Justice Bradley's assertions, find as a fact the date on which Robert's infection developed. Rather, because there was no dispute about the date on which the infection-causing sponge first was present in Robert's abdomen, we determine when the injury occurred as a question of law. *State ex rel. Flores v. State,* 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994) (explaining that when the facts are undisputed, a question of law is presented, which we decide independently).

568

¶ 22. Were we to conclude as the estate and Kathy suggest, it would logically follow that Robert could not have filed a medical negligence action once the infection-producing sponge was present inside of his abdomen, even if that injury led only to a protracted recovery course, rather than to death. However, many claims of medical negligence are not grounded in untreatable injuries. For example, in *Fojut,* a tubal ligation was negligently performed; however, the ligation was re-done subsequently. *Fojut,* 212 Wis. 2d at 832. Because all injuries that result from medical negligence do not lead to death or to an irreversible medical course, it is not reasonable to interpret the word "injury" as the estate and Kathy suggest. As we also have explained, "once a claimant has sustained an injury and has an enforceable claim, that claimant cannot sit on that claim until all consequential damages have come to fruition." *Paul,* 242 Wis. 2d 507, ¶ 39 (citing *Nierengarten v. Lutheran Soc. Servs. of Wis. & Upper Mich., Inc.,* 219 Wis. 2d 686, 701, 580 N.W.2d 320 (1998)). Accordingly, we conclude that the estate's claim for medical negligence accrued more than three years before the estate filed suit. Therefore, it is untimely under Wis. Stat. § 893.55(1m)(a).

C. Wrongful Death

■■

¶ 23. Having concluded that the estate's medical negligence claim is time-barred by Wis. Stat. § 893.55(1m)(a), we now turn to Kathy's wrongful death claim. A claim for damages due to wrongful death is purely statutory, as it was unknown at common law. *Bartholomew v. Wis. Patients Comp. Fund,* 2006 WI 91,

¶ 56, 293 Wis. 2d 38, 717 N.W.2d 216 (citing *Brown v. Chicago & N.W. Ry. Co.,* 102 Wis. 137, 140, 77 N.W. 748 (1898)). When a claim for damages due to wrongful death is based on medical malpractice, the eligible claimants are those claimants listed in Wis. Stat. § 655.007. *Czapinski v. St. Francis Hosp., Inc.,* 2000 WI 80, ¶ 2, 236 Wis. 2d 316, 613 N.W.2d 120. A claim for damages due to wrongful death arising from medical malpractice does not incorporate all of the persons who are entitled to bring a claim for damages due to wrongful death under Wis. Stat. § 895.04(2), which applies when the claim does not arise from medical malpractice. *Id.*, ¶¶ 18–19. As the surviving spouse of Robert, Kathy falls within the class of claimants listed in § 655.007 who are entitled to bring a claim for damages due to wrongful death arising from medical malpractice.

¶ 24. The claim that she brings is a derivative claim, based on the injury that Robert suffered due to medical negligence. *See Lornson v. Siddiqui,* 2007 WI 92, ¶¶ 18–19, 302 Wis. 2d 519, 735 N.W.2d 55 (concluding that Wis. Stat. § 655.007 creates two general types of claims, one of which is a derivative claim in favor of enumerated family members of a patient who has suffered injury or death from medical malpractice).

¶ 25. OHIC has asserted the statute of limitations found in Wis. Stat. § 893.55(1m)(a) as a bar to Kathy's claim because she brought suit more than three years after Robert was injured by medical negligence. Kathy counters that she could not file a wrongful death claim until Robert's death. Therefore, her claim could have accrued no earlier than the date he died, August 11, 2003. Since her claim was filed on August 9, 2006, less than three years later, she argues that it was timely-filed.

¶ 26. Kathy cites to the wrongful death statute, Wis. Stat. § 895.03, for the proposition that a wrongful death claim cannot be brought until there is a death. That statute provides:

> Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state.

§ 895.03. However, § 895.03 does not provide when a claim for damages due to wrongful death accrues, or when it must be brought, or when it will be lost.

¶ 27. Furthermore, because Kathy's claim for damages due to wrongful death is based on alleged medical negligence, we turn to the controlling statute of limitations for all claims arising from alleged medical negligence, Wis. Stat. § 893.55. *Hegarty,* 249 Wis. 2d 142, ¶ 2. The language of § 893.55 is very broad. It addresses "damages for injury arising from any treatment or operation performed by . . . a health care provider, *regardless of the theory on which the action is based.*" § 893.55(1m) (emphasis added). Here, Kathy's theory of recovery is based on the provisions of the wrongful death statute, Wis. Stat. § 895.03.

¶ 28. That Kathy's derivative claim for damages due to wrongful death is controlled by the specific statute of limitations for medical malpractice is further supported by Wis. Stat. § 655.007. It provides:

> [A]ny patient or the patient's representative having a claim or any spouse, parent, minor sibling or child of

the patient having a derivative claim *for injury or death* on account of malpractice is subject to this chapter.

§ 655.007 (emphasis added). Chapter 655 is entitled, "Health Care Liability and Injured Patients and Families Compensation." It is a very comprehensive approach to injuries and death that result from medical malpractice. Accordingly, by expressly establishing that death resulting from medical malpractice is subject to the same rules as is injury that results from medical malpractice, § 655.007 supports the directive that Wis. Stat. § 895.55(1m)(a) applies regardless of whether the claim for damages is based on injury or death.

██ ██

¶ 29. Furthermore, we disagree with Kathy's conclusion that, because a claim for damages due to wrongful death may be brought only if there is first a death, the claim for damages due to wrongful death must accrue on the date of death. As we have stated previously, "there is no logical distinction between injury and death claims arising out of medical malpractice. Once medical malpractice produces a loss, a remedy exists regardless whether the consequence is injury or death." *Rineck v. Johnson,* 155 Wis. 2d 659, 671, 456 N.W.2d 336 (1990), *overruled on other grounds, Chang v. State Farm Mut. Auto Ins. Co.,* 182 Wis. 2d 549, 566, 514 N.W.2d 399 (1994). Kathy's claim for damages due to wrongful death is based on Robert's underlying claim for medical negligence; therefore, Kathy's claim is a "death claim[] arising out of medical malpractice," and it is governed by the statute of limitations in Wis. Stat. § 893.55(1m)(a). *Id.* Under that statute, Kathy's claim for damages due to wrongful death accrued on the same date that the estate's claim accrued: the date of Robert's "injury." As a result, because Kathy's claim for

damages accrued more than three years prior to when she filed her claim, it is time-barred.

¶ 30. The amicus curiae brief of the Wisconsin Association for Justice takes issue with this conclusion, arguing that Wis. Stat. § 893.55(1m)(a) is not the operative statute of limitations for Kathy's wrongful death claim, and that Wis. Stat. § 893.54(2) is the statute of limitations that should govern. Section 893.54(2) is the general statute of limitations for wrongful death actions. It provides: "The following actions shall be commenced within 3 years or be barred: . . . (2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another." However, § 893.54(2) does not address the issue presented here: When does a wrongful death action that is based on medical negligence accrue?

¶ 31. Furthermore, our conclusion, that the statute limiting pre-death medical malpractice claims also limits claims for damages due to wrongful death that arise from medical malpractice, is consistent with our conclusion in *Czapinski*. In *Czapinski*, we concluded that the class of claimants who are entitled to sue for damages due to wrongful death in a medical malpractice context differs from the class of claimants who may sue for damages due to wrongful death in other contexts. *Czapinski*, 236 Wis. 2d 316, ¶¶ 18–19.

¶ 32. We acknowledge that some of our past decisions, outside of the medical malpractice context, could be interpreted to conclude that claims for damages due to wrongful death accrue on the date of the decedent's death. *See, e.g., Terbush v. Boyle*, 217 Wis. 636, 640, 259 N.W. 859 (1935), *overruled on other grounds, Pufahl v. Williams*, 179 Wis. 2d 104, 111, 506 N.W.2d 747 (1993) (interpreting a former statute of limitations consistent with an even earlier statutory provision that provided,

" 'every such action shall be commenced within two years after the death of such deceased person' ").

¶ 33. However, as indicated above, we do not agree that Wis. Stat. § 893.54(2) is the operative statute of limitations for Kathy's claim, because her claim arises from alleged medical malpractice. Wisconsin Stat. § 893.55(1m) states that it is the governing statute of limitations for "damages for injury arising from any treatment or operation performed by . . . a health care provider, *regardless of the theory on which the action is based*." (Emphasis added.) The plain language of the statute instructs that it is to control, "regardless of the theory on which the action is based," whether it be the estate's claim for medical negligence or Kathy's claim for damages due to wrongful death, so long as the action is one for "damages for injury arising from any treatment or operation performed by . . . a health care provider." § 893.55(1m). Kathy's claim for damages due to wrongful death most certainly falls within § 893.55(1m)'s description of the claims it governs. As the court of appeals noted in *Hegarty*, "it is apparent that the legislature intended that any claim alleging negligence against a health care provider would be controlled by § 893.55, even though the medical malpractice claim is based on a wrongful death." *Hegarty*, 249 Wis. 2d 142, ¶ 18.

¶ 34. Finally, even though Wis. Stat. § 893.54(2) provides a general statute of limitations for claims for damages due to wrongful death, "[w]here two statutes apply to the same subject, the more specific controls." *Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis.*, 2005 WI 93, ¶ 175, 282 Wis. 2d 250, 700 N.W.2d 768 (citing *Martineau v. State Conservation Comm'n*, 46 Wis. 2d 443, 449, 175 N.W.2d 206 (1970)); *see also Clark v.*

*Erdmann,* 161 Wis. 2d 428, 436, 468 N.W.2d 18 (1991) (holding that where either Wis. Stat. §§ 893.55 or 893.54 "considered independently could be applicable, only one actually can be applied"). We have previously concluded that, as between §§ 893.55 and 893.54, § 893.55 is the more specific statute:

> Section 893.55 clearly is the more specific of the two statutes. Unlike sec. 893.54, it concerns itself not only with injury to the person, but also with a particular way in which the injury arises, i.e., resulting from an act or omission of a "health care provider."

*Clark,* 161 Wis. 2d at 436–37. The claim for the damages that Kathy seeks, like the estate's claim for damages, accrued on the date of Robert's "injury," not on the date of his death, and because Robert's injury occurred more than three years prior to the filing of Kathy's claim, her claim is time-barred. § 893.55(1m)(a).

¶ 35. Kathy also contends that interpreting the wrongful death statute, Wis. Stat. § 895.03, as a statute of entitlement that establishes a statutory claim brings her claim within the court of appeals' opinion in *Miller.* We agree that § 895.03 establishes the entitlement to a claim for damages due to wrongful death that the legislature created. However, as we explain below, *Miller* never reaches the argument Kathy presents here.

¶ 36. In *Miller,* as in this case, the plaintiffs were an estate, asserting a medical negligence claim on behalf of the decedent, and the decedent's surviving spouse, asserting a wrongful death claim. *Miller,* 170 Wis. 2d at 434. The underlying negligent act in *Miller* was the misdiagnosis and treatment of the decedent's skin cancer, which misdiagnosis and treatment occurred in 1982. *Id.* In 1984, the decedent learned of the

misdiagnosis. *Id.* However, the decedent and his spouse did not bring an action for medical negligence until 1990. *Id.* When the decedent died later that year, his estate continued the medical negligence action on his behalf, and his wife commenced a wrongful death action. *Id.* The circuit court dismissed the estate's medical negligence claim as barred by the statute of limitations, Wis. Stat. § 893.55. *Id.* at 434–35. This decision was not appealed, and the parties did not dispute that the estate's action was correctly held to be time-barred. *Id.* at 435. However, the circuit court allowed the wife's wrongful death claim to proceed because her action was filed within three years of her husband's death. *Id.* The subject of the appeal in *Miller* was whether the wife could maintain her claim for damages due to wrongful death. *Id.* at 434.

¶ 37. The court of appeals determined that the wife could not maintain her claim for damages due to wrongful death because, in order for a claim for damages due to wrongful death to be maintained, it is necessary that the decedent, at the time of death, "could have maintained an action and recovered damages had his death not ensued." *Id.* at 438. Because the decedent's underlying claim for medical negligence was time-barred at the time of his death, his wife's claim for damages due to wrongful death was also barred. *Id.* at 439 (stating that if "the decedent's action was not barred by the applicable statute of limitation [at the time of the decedent's death], the wrongful death action is not barred." (citing *Holifield v. Setco Indus., Inc.*, 42 Wis. 2d 750, 168 N.W.2d 177 (1969)).

¶ 38. We acknowledge that *Miller,* like this case, dealt with a claim for damages due to wrongful death based on underlying medical malpractice, and that Wis. Stat. § 893.55 was the operative statute of limitations.

*Id.* at 434. We also acknowledge *Miller's* statement, despite its context, that "a wrongful death action accrues at the time of the decedent's death." *Id.* at 436 (citing *Terbush,* 217 Wis. at 640).

¶ 39. However, *Miller* did not confront the issue presented to us in this review, i.e., whether a surviving relative's claim for damages due to wrongful death accrues on the same date as does the medical negligence action on which it is based. *Miller's* statements regarding the date of accrual of a claim for damages due to wrongful death based on underlying medical malpractice were dicta, as they were not necessary to the theory on which the court of appeals decided the case. *State v. Sartin,* 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996) (explaining that dictum "is a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it"). As a result, those statements have no precedential value. *Id.* at 65 (reasoning that "dicta does not amount to legal precedent"); *DOR v. Howick,* 100 Wis. 2d 274, 286, 303 N.W.2d 381 (1981) (concluding that "dicta does not have any precedential value").

¶ 40. The conclusion upon which the *Miller* decision was based was that the decedent, himself, had no actionable claim for medical negligence at the time of his own death. *Miller,* 170 Wis. 2d at 441 ("[A] wrongful death action cannot be brought unless the decedent, at the time of his death, was entitled to maintain an action and recover damages."). The court concluded that because a wrongful death claim cannot be maintained if a decedent had no claim at the time of his death, *id.,* Miller's wife's claim was barred. Accordingly, the accrual

date for the wife's wrongful death action was not relevant to the reasoning of the court in deciding the case.[8]

¶ 41. Our conclusions about *Miller* are further strengthened because *Miller* relied on our decision in *Terbush* to say that claims for damages due to wrongful death accrue on the date of death. *Id.* at 436 (citing *Terbush,* 217 Wis. at 640). *Terbush* is a case from 1935 that was decided long before the adoption of Wis. Stat. § 893.55 (originally passed in 1979). Furthermore, *Terbush* dealt with a claim for wrongful death based on an underlying automobile collision. *Terbush,* 217 Wis. at 636. Therefore, *Miller's* reliance on *Terbush* to say that a wrongful death action based on medical negligence accrues on the date of the decedent's death is misplaced. *Terbush* does not apply in the medical negligence context.

---

[8] Justice Crooks' dissent/concurrence quotes the following language from *Miller v. Luther,* 170 Wis. 2d 429, 489 N.W.2d 651 (Ct. App. 1992), and argues that the court of appeals' statements with regard to the accrual date of a claim for damages due to wrongful death were not dicta: "[*Miller's*] *wrongful death action was not barred by the application of its own statute of limitation,*" *id.* at 441. Justice Crooks' dissent/concurrence, ¶ 98 n.2 (emphasis added in Justice Crooks' dissent/concurrence). However, the court of appeals in *Miller* engaged in no substantive analysis of the statute of limitations applicable to Miller's wrongful death claim, and made this quoted statement only after concluding that Miller's claim for damages due to wrongful death was barred because her husband could not have maintained a cause of action at the time of his death. *Miller,* 170 Wis. 2d at 441. Accordingly, the accrual date of Miller's claim for damages due to wrongful death was not necessary to the holding that her claim was barred; the court of appeals' statements were dicta in this respect. *State v. Sartin,* 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996) (explaining that dictum "is a statement or language expressed in a court's opinion [that] extends beyond the facts in the case and is . . . not essential to the determination of the issues").

¶ 42. Justice Crooks' dissent/concurrence also relies on *Holifield,* a case cited in *Miller,* for the same premise.[9] However, *Holifield,* like *Terbush,* is inapposite in this case. First, *Holifield* predates adoption of Wis. Stat. § 893.55, the controlling statute in this case. Second, the claim for damages due to wrongful death in *Holifield* was based on underlying actions for products liability and negligent manufacture based on injuries that resulted when the grinding wheel on a grinding machine exploded. *Holifield,* 42 Wis. 2d at 752, 754–56. Accordingly, *Holifield,* like *Terbush,* cannot serve as a basis for concluding that Kathy's claim for damages due to wrongful death accrued on the date of Robert's death; its holding does not apply in the medical negligence context.[10]

¶ 43. Finally, we note that, because the decision in *Miller* was exclusively based on the conclusion that the decedent had no actionable claim for medical negligence at the time of his death, *Miller,* 170 Wis. 2d at 441, the court of appeals did not answer a number of other questions that appear to have been posed by the facts of that case. *Id.* at 434–35 (noting that the defendants in *Miller* did challenge the wife's claim for damages due to wrongful death on the basis that it "was barred by the medical malpractice statute of limitations, sec. 893.55, Stats."). For example, the underlying medical negli-

[9] Justice Crooks' dissent/concurrence, ¶ 96.

[10] Our discussions of *Terbush v. Boyle,* 217 Wis. 636, 640, 259 N.W. 859 (1935), and *Holifield v. Setco Industries, Inc.,* 42 Wis. 2d 750, 168 N.W.2d 177 (1969), are made in the context of examining a claim for damages arising from medical negligence. Stated otherwise, we have decided this case in the context in which it arose, alleged medical malpractice, and based on the statute of limitations that controls all medical malpractice actions, Wis. Stat. § 893.55(1m)(a).

gence occurred in 1982, and Wis. Stat. § 893.55 was the controlling statute of limitations, yet the plaintiffs did not assert claims until 1990. *Id.* The date of the decedent's "injury" for purposes of § 893.55 was never discussed by the court.

¶ 44. In addition, Wis. Stat. § 893.55(1m)(b) provides that if § 893.55(1m)(a) does not yield a later limitations period, the action shall be commenced within:

> One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

§ 893.55(1m)(b).[11] As is apparent, § 893.55(1m)(b) provides a statute of repose, wherein no action may be commenced for medical malpractice "more than 5 years from the date of the act or omission," regardless of when the injury occurred, was discovered or reasonably should have been discovered. *Id.* The plaintiffs in *Miller* were arguing that the negligent "act or omission" occurred in 1982, yet they did not file until 1990, eight

---

[11] We also note that Justice Crooks' dissent/concurrence would lead to a result that is inconsistent with the five-year statute of repose set forth in Wis. Stat. § 893.55(1m)(b). Specifically, if claims for damages due to wrongful death in the medical negligence context were held to accrue on the decedent's date of death, rather than on the date of injury, a situation could arise where a claim for damages due to wrongful death could be brought almost six years after the date of the underlying medical negligence that caused the injury—three years for the claim of the medical patient subjected to medical negligence, plus an additional three years for the claim for damages due to wrongful death. This result would directly contravene the five-year statute of repose contained in § 893.55(1m)(b).

years later. *Miller,* 270 Wis. 2d at 434. Certainly the five-year statute of repose precluded their actions. However, the court of appeals did not address § 893.55(1m)(b).[12]

¶ 45. As a result, because of the limited and exclusive basis for the court of appeals' decision, the lack of any discussion regarding Wis. Stat. § 893.55, and the fact that the court's statements regarding the accrual date for the wife's claim for damages due to wrongful death were no more than dicta, we conclude that *Miller* does not persuasively support the proposition that claims for damages due to wrongful death based on underlying allegations of medical negligence accrue on the date of the decedent's death, rather than on the date of the underlying "injury" to the decedent.

¶ 46. As a final contention, Kathy asserts that to reject *Miller*'s statements regarding the accrual date of claims for damages due to wrongful death in the medical malpractice context, and to hold that her claim for damages due to wrongful death accrued on the date of Robert's "injury," will lead to unduly harsh results. Specifically, Kathy argues that our interpretation of the statute as applied to her wrongful death claim will mean that some claims may accrue before they can be brought. We acknowledge that this may be a result of our decision. However, harshness is not a permissible basis for reaching a different conclusion. *Scott v. Savers Prop. & Cas. Ins. Co.,* 2003 WI 60, ¶ 37, 262 Wis. 2d 127, 663 N.W.2d

---

[12] Oft times a court's decision seems incomplete because statutory provisions that appear to apply are not addressed. However, the focus of court decisions is generally controlled by the litigants, and if they do not raise a particular issue, generally the court does not address it.

715 (rejecting plaintiffs' claims even though "[t]he outcome of this case is harsh, and the harshness of our holding is especially palpable because the negligence is so clear").

¶ 47. In addition, it is not our place to question the policy decisions of the legislature. *Hoida, Inc. v. M&I Midstate Bank,* 2006 WI 69, ¶ 24, 291 Wis. 2d 283, 717 N.W.2d 17 (reasoning that "[t]he legislature . . . establishes public policy for the state through the statutes it enacts, and we are limited 'to applying the policy the legislature has chosen to enact, and may not impose [our] own policy choices' " (quoting *Fandrey v. Am. Family Mut. Ins. Co.,* 2004 WI 62, ¶ 16, 272 Wis. 2d 46, 680 N.W.2d 345)). It is apparent that "the legislature intended to set medical malpractice cases involving death apart from other death cases." *Rineck,* 155 Wis. 2d at 671. The preamble of Wis. Stat. § 893.55 shows that the purpose of the statute was to limit the liability of health care providers in certain circumstances based on a difficult balancing of a number of competing policies. § 893.55(1d)(a). It is not our place to second-guess those policy decisions. *Hoida,* 291 Wis. 2d 283, ¶ 24. We therefore reject Kathy's argument.[13]

---

[13] Justice Crooks suggests that our conclusion here "may foster a public perception that common sense sometimes is lacking in court decisions." Justice Crooks' dissent/concurrence, ¶ 89. However, his criticism may be more appropriately viewed as an expression of frustration with the unambiguous language of Wis. Stat. § 893.55(1m)(a). The fact is, the legislature has expressly stated that "an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within . . . [t]hree years from the date of the injury."

¶ 48. We have concluded that Kathy's wrongful death claim is derivative of a medical negligence claim, for which the applicable statute of limitations is Wis. Stat. § 893.55(1m)(a). Because the accrual date for claims under § 893.55(1m)(a) is the date of "injury" caused by the underlying act of medical negligence, and the "injury" Robert suffered here occurred more than three years prior to the filing of Kathy's wrongful death claim, we conclude that her claim is time-barred. § 893.55(1m)(a).

## III. CONCLUSION

¶ 49. Because we conclude that Robert suffered an "injury" for purposes of Wis. Stat. § 893.55(1m)(a) when he experienced a "physical injurious change," and that the "physical injurious change" occurred more than three years prior to the filing of the estate's claim, we conclude that the estate's claim is time-barred by

---

Wis. Stat. § 893.55(1m)(a). Kathy's claim for damages due to wrongful death is "an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider." We are bound to apply the statute, and under the statute's plain language, Kathy's wrongful death claim accrued on the "date of the injury." *Id.*

We appreciate Justice Crooks' concern that it may appear that one could be required to file a claim for damages due to wrongful death before the death occurs. However, this concern is misplaced because a claim for wrongful death damages is a derivative claim for damages that may be added by amending a complaint for medical negligence that was brought before the patient dies. Wis. Stat. § 802.09(3); *see Korkow v. Gen. Cas. Co. of Wis.*, 117 Wis. 2d 187, 196, 344 N.W.2d 108 (1984). Or, the claim for damages due to wrongful death may be brought simultaneously with the pre-death claim of medical negligence if the patient is deceased at the time the claims are filed.

§ 893.55(1m)(a). We further conclude that Kathy's wrongful death claim based on Robert's death that allegedly was caused by medical negligence accrued on the same date as the estate's claim. Therefore, it, too, is precluded by § 893.55(1m)(a). Accordingly, we affirm the decision of the court of appeals that affirmed the circuit court's decision granting summary judgment in favor of OHIC.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 50. ANN WALSH BRADLEY, J. *(concurring in part and dissenting in part)*. Is death a condition precedent to a wrongful death claim? It seems pretty obvious that the answer should be "yes."

¶ 51. Yet, the majority answers this question "no." Acknowledging some displeasure with its own response, the majority attempts to blame the legislature for the majority's interpretation. *See* majority op., ¶ 46, ¶ 47 n.11. The legislature could not have intended such a result.

¶ 52. I instead conclude that a wrongful death claim accrues upon death—not before death—and therefore join Justice Crooks in dissenting. As he aptly discusses, it is impossible to read the language of Wis. Stat. § 895.03 or our prior cases "in any way other than that death is a condition precedent, which must be met, before there can be such a lawsuit for wrongful death." J. Crooks' dissent/concurrence, ¶ 93.

¶ 53. I write separately, however, to address two additional infirmities of the majority opinion. First, although I agree with the majority that Robert's estate's claim for medical malpractice is barred by the statute of limitations, I do not join its analysis. In determining that Robert suffered an injury on the date that an

584

"infection-producing sponge" was left in his abdomen, the majority's discussion fails to elucidate a clear holding and in fact confuses the law.

¶ 54. Second, I write separately to comment on the majority's discussion of dicta. Instead of providing a clear definition of dicta, the majority provides multiple incomplete definitions. It fails to acknowledge as we have previously explained that Wisconsin has two lines of cases defining dicta, and the majority does not even mention one of them. Rather, with minimal analysis, it dismisses as dicta a difficult proposition from a previous case, avoiding any meaningful discussion. Such an approach fosters an end run around stare decisis and undermines our common law tradition of fidelity to precedent.

I

¶ 55. The circuit court correctly observed that under Wisconsin law, the cause of action accrues on the date of injury and injury is defined as a "physical injurious change." *See Fojut v. Stafl,* 212 Wis. 2d 827, 831, 569 N.W.2d 737 (Ct. App. 1997). The court explained that in this case, there were three events which were advanced as the possible dates of a physical injurious change to the plaintiff's body: (1) the date "when the sponge was left inside him," (2) the undetermined date, sometime "shortly after the first surgery and prior to the second, when Mr. Genrich developed infection and was running a fever," and (3) the date of the second surgery which "involved an invasive procedure of Mr. Genrich being cut open to remove the sponge . . . ."

¶ 56. Ultimately, the court made a finding that the physical injurious change in this case occurred on the date of the second surgery: "[T]he Court finds that

the latest point where the injury occurs that forms the first justification for a claim would be the second surgery, which would not have been necessary but for the negligence of the medical staff."

¶ 57. The majority, however, determines otherwise. It states, "It was the negligence during the first surgery that resulted in an infection-producing sponge being present in Robert's abdomen." Majority op., ¶ 19. Further, "the presence of an infection-producing sponge in Robert's abdominal cavity is the type of 'physical-injurious change' discussed in [our case law.]" *Id.*, ¶ 20. The majority concludes: "When the doctors negligently left a sponge inside of Robert, which caused the sepsis that resulted in his death, he sustained an 'injury' that triggered Wis. Stat. § 893.55(1m)(a)'s three-year limitations period." *Id.*

¶ 58. In focusing on the first surgery, it is unclear whether the majority intends to be making a finding of fact or a conclusion of law. To the extent that the majority is finding the fact of when the physical injurious change occurred, the majority ignores the well-established principle that an appellate court will not disturb a finding of fact of the circuit court unless it is clearly erroneous. The majority offers no analysis as to why it can supplant its finding for that of the circuit court.

¶ 59. If the majority's determination is a conclusion of law, then it fails to elucidate a clear test and confuses the law. I cannot join the majority opinion because I do not understand what the majority holds.

¶ 60. Under the majority's test, when is there a "physical injurious change"? That is, when does the cause of action accrue?

586

¶ 61. Does it accrue on the day that a foreign object is left in the body? I am unsure. The majority's test seems to require more.

¶ 62. Does the majority's conclusion mean that when there is no subsequent physical change, sponges and other foreign objects can be left in a patient's body with impunity? I don't know. But if so, how could the law countenance such a conclusion?

¶ 63. Throughout the opinion, the majority repeatedly refers to the sponge as "infection-producing." See majority op., ¶¶ 18, 19, 20, 20 n.7. This grammatical construction suggests that it is not the leaving of a foreign object in the body that is the injury—rather, an injury occurs when a foreign object is left and the object produces an infection.

¶ 64. This begs the question. The majority finds that "the infection-causing sponge was present in Robert's abdomen" on the date of the first surgery. Majority op., ¶ 20 n.7. The majority states further that there is no dispute that "the infection-causing sponge first was present in Robert's abdomen" on the date of the first surgery. *Id.*

¶ 65. The majority's assertion is only half correct. Certainly, there is no dispute that the sponge was present on the date of the first surgery. Yet, there are no facts in the record that indicate that the sponge was "infection-producing" when the first surgery was performed.

¶ 66. There is nothing in the record that indicates whether the doctors selected a clean, sterile sponge to use during surgery, or whether the sponge was infected when it was initially left in Robert's abdomen. Arguably,

the sponge started producing an infection at some point after the surgery occurred.[1]

¶ 67. The majority can point to no facts in the record that demonstrate that the sponge was "infection-producing" the moment it was initially left in Robert's abdomen.[2] The majority's unfounded factual assumption that the events occurred simultaneously allows it to evade a more thorough examination of its new test.

¶ 68. Consider the facts of a California case where the events were not simultaneous.[3] A curved surgical needle was left in the soft tissue of the patient's

[1] There are a plethora of medical malpractice sponge cases. Even sponges which reportedly were sterile have been the subject of claims involving infectious injury. *See, e.g., Faherty v. Gracias,* 874 A.2d 1239, 1247 (Pa. Super. 2005); *Hutchins v. Fletcher Allen Health Care,* 776 A.2d 376, 377 (Vt. 2001); *Fritz v. Horsfall,* 163 P.2d 148, 161 (Wash. 1945).

One such case is *Seals v. Gosey,* 565 So. 2d 1003 (La. App. 1990). There, the court observed that it was the consensus of medical experts that sponges which are initially sterile can be the nesting place for infections to grow, thereby exacerbating an infectious condition. In that instance, the sponge may not be the cause but rather is a cause of the infectious injury. "The medical experts unanimously testified that sterile gauze will not itself cause an infection but that it can be a nesting place for an infection to grow." *Id.* at 1010.

[2] The majority can only assert that the infection developed "soon" after the July 24 surgery. Majority op., ¶ 3. This fact is consistent with the record, but it does not establish when the sponge became "infection-producing."

Only two and one-half weeks elapsed between the first surgery and Robert's death. At some time during this period, the infection developed. Stating that the infection developed "soon" after the surgery does nothing to pinpoint when in fact the sponge started producing an infection.

[3] *See Bowers v. Olch,* 260 P.2d 997 (Cal. App. 2d 1953).

abdomen. About two and one-half years after the surgery, the patient sought medical treatment because he had enlarged lymph glands and was experiencing attacks of high fever. X-rays revealed the presence of the needle. He was advised by the original surgeon that it was not necessary to remove the needle because it was safely encased in scar tissue. Another surgeon, however, performed the surgery to remove the needle and later testified that "it was necessary to remove the needle, that it had punctured the colon, caused peritonitis and the illness which plaintiff suffered preceding the finding of the needle." *Bowers v. Olch,* 260 P.2d 997, 1001 (Cal. App. 2d 1953).

¶ 69. If the majority's test was applied to the facts of that case, would the cause of action accrue on the date that the surgeon left the needle which caused the subsequent rupture, peritonitis, and fever? I think so, but am unsure. It seems odd that the cause of action could accrue two and one-half years before the injury even occurs. How could the law support such an incongruous result? The answer is that it does not. Such a result would be contrary to well-established Wisconsin law.

¶ 70. For years, Wisconsin cases have repeatedly held that "the date of the negligent act and the date of the injury in medical malpractice cases are not always one and the same." *Fojut,* 212 Wis. 2d at 830; *see also Paul v. Skemp,* 2001 WI 42, ¶ 20, 242 Wis. 2d 507, 625 N.W.2d 860 ("The plain language of Wis. Stat. § 893.55(1)(a) indicates that it is not the negligence, but the injury resulting from the negligent act or omission which initiates the limitations period.").

¶ 71. There are strong policy reasons for keeping negligence and injury analytically separate. "If a negligent act or omission . . . triggered the limitations pe-

riod . . . potential claimants who have not yet been injured would be seeking relief for damages that may never occur." *Paul,* 242 Wis. 2d 507, ¶ 42.

¶ 72. What is particularly troublesome is that all of the uncertainty engendered by the majority's analysis is unnecessary. The majority has no need to determine that "the presence of an infection-causing sponge" is an injury.

¶ 73. The estate's claim for medical malpractice was not filed until August 9, 2006, three years and one day after the circuit court determined that the action accrued. Even if Robert's injury occurred as late as August 8, 2003, the estate's medical malpractice claim accrued more than three years before the claim was filed. Thus, I agree that the claim is barred by the statute of limitations.

## II

¶ 74. I also write separately to comment on the majority's categorization of a previous court of appeals statement as "dicta." *See* majority op., ¶ 39, ¶ 40 n.8 (discussing *Miller v. Luther,* 170 Wis. 2d 429, 489 N.W.2d 651 (Ct. App. 1992)).

¶ 75. The contours of a jurisprudence are shaped in part by how dicta is defined and applied. Yet, it has recently been observed that because judges often select definitions as needed for the resolution of a particular case, the definitions of dicta vary from jurisdiction to jurisdiction and across courts: "Through a loose set of practices that vary considerably across jurisdictions, and, perhaps more problematically, across courts and cases, judges, entirely on their own, define such terms as needed to assist in the task of resolving particular cases." Michael Abramowicz & Maxwell Stearns, *Defining Dicta,* 57 Stan. L. Rev. 953, 958 (2005).

¶ 76. The problem with the majority opinion lies not in the varying and often inconsistent definitions of dicta across multiple jurisdictions or courts. Rather, the problem is that the majority fails to elucidate a clear and consistent definition of dicta within this one opinion. Within the same opinion, it provides four different tests for determining whether a statement is dicta.

¶ 77. It first describes dicta as a statement that is "not necessary to the theory on which the court . . . decided the case." Majority op., ¶ 39. Next, it employs a three-part test defining dicta as a statement "which [1] extends beyond the facts in the case and [2] is broader than necessary and [3] not essential to the determination of the issues before it." *Id.* Then, focusing on the "relevan[cy]" and the "reasoning," it defines dicta as a statement that is "not relevant to the reasoning of the court in deciding the case." *Id.*, ¶ 40. Finally, it focuses on the necessity and the holding and defines dicta as a statement that is "not necessary to the holding." *Id.*, ¶ 40 n.8.

¶ 78. The majority fails to acknowledge, as we have previously explained, that in Wisconsin there are two lines of cases defining dicta. *State v. Leitner,* 2002 WI 77, ¶ 22 n.16, 253 Wis. 2d 449, 646 N.W.2d 341. Under one line of cases, a court's discussion of a question "germane to . . . the controversy" is not dicta:

> It is deemed the doctrine of the cases is that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.

*State v. Picotte,* 2003 WI 42, ¶ 61, 261 Wis. 2d 249, 661 N.W.2d 381 (quoting *Chase v. Am. Cartage Co.,* 176 Wis.

235, 238, 186 N.W. 598 (1922)); *see also State v. Kruse,* 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981) ("While the statement in [a prior case] was not decisive to the primary issue presented, it was plainly germane to that issue and is therefore not dictum.").

¶ 79. The court of appeals has also noted that "[w]hen an appellate court intentionally takes up, discusses and decides a question germane to a controversy, such a decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Holt,* 128 Wis. 2d 110, 123, 382 N.W.2d 679 (Ct. App. 1985); *see also State v. Sanders,* 2007 WI App 174, ¶ 25, 304 Wis. 2d 159, 737 N.W.2d 44; *State v. Rushing,* 2007 WI App 227, ¶ 12, 305 Wis. 2d 739, 740 N.W.2d 894. .

¶ 80. A competing line of cases defines dicta as "a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it." *State v. Sartin,* 200 Wis. 2d 47, ¶ 60 n.7, 546 N.W.2d 449 (1996). This is one of the four definitions of dicta used by the majority in this case. See majority op., ¶¶ 39, 40.

¶ 81. Yet, the majority never discusses whether the statement it dismisses as dicta was "germane to the controversy before the court." It never acknowledges the line of cases quoted above. Instead, it simply ignores the question.[4]

---

[4] The majority never examines whether the *Miller* court intentionally took up, discussed, and decided the question of when Miller's wife's claim for wrongful death accrued. *See* majority op., ¶¶ 35–45 (discussing *Miller v. Luther,* 170 Wis. 2d 429, 489 N.W.2d 651 (Ct. App. 1992)). Miller died on October 22, 1990, and his wife filed a wrongful death action based on medical malpractice one month after his death. *Miller,* 170

¶ 82. How a court defines and applies dicta is important to our common law tradition of fidelity to prior cases. The principle of stare decisis—the obligation to adhere to past opinions—"promotes the even-handed, predictable, and consistent development of legal principles." Jordan Wilder Connors, *Treating Like Subdecisions Alike: The Scope of Stare Decisis as Applied to Judicial Methodology*, 108 Colum. L. Rev. 681 (2008). The constraint placed on courts by stare decisis inhibits courts from acting arbitrarily and capriciously.

¶ 83. Yet, loose and unpredictable standards for determining whether a statement is dicta can undermine stare decisis and the principles of judicial restraint. As Judge Brown of the court of appeals has stated, "[t]he term 'dicta' . . . is often too broadly defined, usually by a lawyer who is searching for a way not to be bound by a prior published decision." *Sanders,* 304 Wis. 2d 159, ¶ 41 (Brown, J., concurring).

Wis. 2d at 434. The circuit court denied the defendants' motion for summary judgment, concluding that the wrongful death action was timely because it was filed within three years of death. *Id.* at 435.

The court of appeals reversed the circuit court's decision. *Id.* at 442. It determined that even though the action was not barred by the wrongful death statute of limitations, it could not be maintained for other reasons. *Id.* The court stated: "As indicated earlier, a wrongful death action accrues at the time of death, and this opinion does not change that rule." *Id.*

Surely, this proposition was germane to the issue before the court—the statute of limitations for a wrongful death action was the basis of the circuit court's decision. Further, if the claim was barred by the wrongful death statute of limitations, the court would have no need to reach out and decide that the claim could not be maintained on other grounds.

¶ 84. Commentators have noted that "[a]s the distinction between holding and dicta becomes increasingly vague, past precedents can be increasingly manipulated. Judges will face greater temptation to cheat . . . when they can offer some facially plausible argument for disregarding a statement in a prior case." Abramowicz & Stearns, *supra,* at 1024.

¶ 85. Here, the majority fails to elucidate a clear standard for determining whether a court's statement is dicta. Instead, it employs the term dicta selectively to dismiss a difficult proposition from a prior decision without meaningful analysis. This end run around stare decisis undermines our common law tradition of fidelity to precedent.

¶ 86. For the reasons discussed above, I respectfully concur in part and dissent in part.

¶ 87. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice N. PATRICK CROOKS join this concurrence/dissent.

¶ 88. N. PATRICK CROOKS, J. (*dissenting in part, concurring in part*). There are undoubtedly statute of limitations cases where the crucial question of the date the claim accrued is a close question that requires a court to make a difficult decision. A wrongful death case, however, should not be such a case.

¶ 89. The approach adopted by the majority in this case—that a three-year statute of limitations on a wrongful death claim somehow runs before three years have elapsed after the date of death[1]—unfortunately may foster a public perception that common sense sometimes is lacking in court decisions.

¶ 90. Because long-standing precedent in Wisconsin establishes the date of death as the date on which a

---

[1] Majority op., ¶ 34.

wrongful death claim accrues, and because the majority rule creates an unnecessary exception to this sensible approach, I respectfully dissent from that portion of the majority opinion.

¶ 91. I agree with the majority, however, that the estate's claim for injury to Robert Genrich allegedly caused by medical malpractice is time-barred because of the application of Wis. Stat. § 893.55(1m)(a).

¶ 92. In regard to the wrongful death action of Kathy Genrich, as the surviving spouse of Robert Genrich, the place to start the analysis is with the wrongful death entitlement statute, Wis. Stat. § 895.03, which states:

> Recovery for death by wrongful act. Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured; provided, that such action shall be brought for a death caused in this state.

¶ 93. The statute seems quite clear that in order to recover for a death, the party responsible for the injury resulting in death may be sued for damages despite the death of the person injured. It seems impossible to me to read the statute in any way other than that death is a condition precedent, which must be met, before there can be such a lawsuit for wrongful death.

¶ 94. That conclusion is consistent with Wisconsin case law. An action for wrongful death did not exist at common law, but rather is a statutory remedy,

available under the terms and conditions specified in the statutes. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 312, 294 N.W.2d 437 (1980). In Wisconsin, the legislature created a wrongful death action in 1858. *Terbush v. Boyle,* 217 Wis. 636, 638, 259 N.W.2d 859 (1935).

¶ 95. In *Terbush,* the question was when did the claim accrue: (1) on the date of injury; (2) on the date of death; or (3) when the administrator was appointed. This court, in a unanimous opinion authored by then Chief Justice Marvin B. Rosenberry, clearly answered the question: "The action for wrongful death accrues at time of death . . . ." *Id.* at 640.

¶ 96. In *Holifield v. Setco Indus., Inc.,* 42 Wis. 2d 750, 168 N.W.2d 177 (1969), we were asked to answer the question of when the statute of limitations began to run in a wrongful death action based on product liability or negligent manufacture. We focused on the language in Wis. Stat. § 895.03, and concluded that if the decedent could not have brought an action, then his special administratrix could not have brought an action. *Id.* at 757. In concluding that the decedent could have brought the action for damages, and, therefore, that the special administratrix could bring a wrongful death action, we stated: "Since he would not have been barred by the applicable statute of limitations, the special administratrix of his estate is not barred, provided, of course, *the action is brought within three years of the death,* as was here done." *Id.* (emphasis added). We clearly stated that the action accrued at the date of death.

¶ 97. In the case of *Miller v. Luther,* 170 Wis. 2d 429, 440–41, 489 N.W.2d 651 (Ct. App. 1992), a case involving allegations of medical malpractice, it was stated:

Section 895.03 is not a statute of limitation, but rather is an entitlement statute. Although *a wrongful death action accrues at the time of the decedent's death,* a beneficiary is not even entitled to bring a wrongful death action unless the conditions in sec. 895.03 exist. Section 895.03 mandates that a wrongful death action cannot be brought unless the decedent, at the time of his death, was entitled to maintain an action and recover damages. [Emphasis added.]

¶ 98. In *Miller,* the court of appeals went on to emphasize, again, that "a wrongful death action accrues at the time of death . . . ." *Id.* at 442.[2]

¶ 99. In the case before the court, since Robert Genrich had a claim at the time of his death on August 11, 2003, his surviving spouse, Kathy Genrich, had a claim for wrongful death that accrued on that date—the date of his death. This wrongful death claim, therefore, was brought within the applicable statute of limitations when commenced on August 9, 2006.

---

[2] The majority claims that these statements are dicta. Majority op., ¶ 39. The court of appeals' holding in *Miller* that a wrongful death action accrues at the time of the decedent's death, but that such "action cannot be brought unless the decedent, at the time of his death, was entitled to maintain an action and recover damages," was essential to the court's determination of the issues based on the particular facts before it. *Miller v. Luther,* 170 Wis. 2d 429, 441, 489 N.W.2d 651 (Ct. App. 1992).

In setting forth its holding, the court of appeals went on to emphasize the significance of accrual at the time of death: "Thus, Miller's wrongful death action was barred by a statute of limitation *only to the extent that her husband failed to preserve his medical malpractice claim* against Luther, and, subsequently, barred Miller's action under sec. 895.03. *Her wrongful death action was not barred by the application of its own statute of limitation."* *Id.* (emphasis added).

¶ 100. For the foregoing reasons, focusing on the relevant statutory language and long-standing precedent in Wisconsin, I respectfully dissent in part and concur in part.

¶ 101. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this opinion.